## PHELAN and others vs. BOYLAN and others.

*Tenant for life and reversioners: Rights and duties as to payment of taxes and acquisition of tax title — Equitable interference in behalf of reversioner. — Judgment of waste not accompanied by forfeiture.*

1. Tenant for life, in possession, who takes a tax deed for taxes due before his tenancy commenced, if he can acquire title at all thereby, holds it for the benefit of the reversioners as well as for his own.

2. Where tenant by the curtesy took such tax deed, and his wife's title had been by deed made to her before marriage and in her maiden name, and there was nothing of record to show who were the heirs-at-law of the grantee so named, or that such tenant was in possession as surviving husband: *Held*, that equity would interfere to protect the rights of the reversioners, which were liable to be lost by a conveyance of the land to one purchasing without notice of the facts.

3. In such a case the judgment should be, that, on payment by the reversioners of their ratable proportion of the cost of the tax deed, the title

conveyed thereby should vest in them, subject to the life estate of the tenant; and the judgment should be recorded in the registry of deeds.

4. Where the tenant has also taken a tax deed, which he fraudulently refuses to record, the judgment should further require him to put such deed on record, and should provide as above in reference to the title conveyed by it.

5. Tenant for life who neglects to pay taxes which accrue *after* his tenancy commences, is liable to an action for *waste*.

6. Under the laws of this state, judgment for waste is *not* accompanied by *forfeiture* of the estate.

7. Whether equity would interfere merely on the ground of such neglect, *quære*.

8. But where the reversioners are entitled to equitable relief on the grounds previously stated, the decree will be so framed as to compel the tenant to refund moneys paid by them in redemption from sales for taxes which he should have paid, and also to redeem from other outstanding sales for such taxes, and perhaps to give security for the payment of taxes in future.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought by *Martin Phelan*, as administrator of the estate of Grace Boylan, deceased, and by said *Martin* and *Patrick Phelan*, as heirs-at-law of said deceased, against *Matthew Boylan* and *Terence Cook*, and their wives. The facts alleged and the relief sought will sufficiently appear from the opinion. The defendants demurred to the complaint as not stating a cause of action, and for misjoinder of causes of action; and from an order sustaining the demurrer the plaintiffs appealed.

*E. Fox Cook*, for appellant.

*Palmer, Hooker & Pitkin*, for respondent.

DIXON, C. J. The defendant *Matthew Boylan* is tenant by the curtesy of the premises in controversy, and the plaintiffs are the heirs-at-law and reversioners entitled to an estate in fee in the land, immediately upon the determination of such life tenancy. Before the death of his late wife, upon which his estate as tenant by the curtesy arose, and while he was residing with her upon the premises, the same were several times sold for the non-

payment of taxes. The time for redemption had not yet expired when the wife died. He remained in possession, holding as tenant after her decease, and, very soon thereafter, took out tax deeds upon two of the sales in his own name as grantee, and caused the same to be recorded. Subsequently tax deeds were also issued upon three other sales, to as many different parties, and they were duly recorded. Thereupon the tenant procured conveyances to himself from those parties by quitclaim, and had them recorded, except one which the plaintiffs charge he fraudulently withholds from record, in order to endanger and defeat their title. The complaint likewise charges that all the acts of the tenant in procuring the deeds were done in pursuance of a fraudulent intent on his part to cheat and deprive the plaintiffs of their inheritance. Upon the facts thus stated, which are admitted by the demurrer, the first question arising is, as to the effect of these conveyances. Did the tenant acquire any right or interest which he can be permitted to set up or use for the purpose of defeating the inheritance?

The complaint alleges, as matter of law, that it was the duty of the defendant to have redeemed the land by payment of the taxes. This may or may not have been so. If the tenant had chosen to let the land go for the taxes, so that valid title and possession would have been acquired by a stranger, thus forfeiting his life estate as well as the inheritance, it is possible that the heirs would have had no ground of complaint or cause of action against him. The taxes having accrued before the life estate arose or tenancy existed, it may be that the tenant was not chargeable, at all events, with the duty of paying them. But be this as it may, there exist other grounds here for holding that he shall take no advantage as against the reversioners of the title he has acquired. The taxes here were a charge upon the land, a lien, in fact, upon the life estate of the tenant as well as the fee of the reversioners; and where that is the case, a purchase by the tenant, or title acquired

by him in pursuance of such charge, enures to the benefit of the reversioner as well as himself. The established doctrine is, that a tenant for life in possession, in the purchase of an incumbrance upon the estate, is regarded as having made the purchase for the joint benefit of himself and the remainder-man or reversioner, and cannot hold it for his own exclusive benefit. *Daviess v. Myers*, 13 B. Monroe, 513. And the principle has been often more broadly stated, and no doubt correctly. It has been said to be certainly true, as a general proposition, that if a trustee, mortgagee, or tenant for life, being in possession, purchases in an outstanding title or incumbrance, he cannot apply it to his own benefit, but it in general enures to the benefit of him under whom he entered, or is considered as held in trust for the *cestui que trust*, mortgagor, or him in reversion or remainder. *Bowling's Heirs v. Dobyns' Adm'rs*, 5 Dana, 446; *Morgan's Heirs v. Boone's Heirs*, 4 Monroe, 297. "Indeed, it is a general principle," says Chancellor KENT, "pervading the cases, that if a mortgagee, executor, trustee, tenant for life, etc., who has a limited interest, gets an advantage by being in possession, 'or behind the back' of the party interested in the subject, or by some contrivance in fraud, he shall not retain the same for his own benefit, but hold it in trust." *Holridge v. Gillespie*, 2 Johns. Ch. 33. "A release of a right, made to a particular tenant for life, or in taile, shall aid or benefit him or them in remainder." Co. Litt., §§ 453 and 267 b ; see also *Hurd v. Hall*, 12 Wis. 137; and *Lawton v. Howe*, 14 id. 247, and cases there cited ; and *Burhans v. Van Zandt*, 7 N. Y. 523; and *Van Horne v. Fonda*, 5 Johns. Ch. 388.

It being established that the tenant can take no benefit or advantage of the title acquired as against the reversioners, the next question to be considered is as to the remedy or redress which the latter shall have against him. Can this proceeding in equity be maintained against him ? It being, as Chancellor KENT says, a title which he shall

not retain for his own benefit, but which he holds *in trust* for the reversioners, there would seem to be no doubt about the jurisdiction of equity to work out and declare such trust, and to so provide that the interests of the *cestuis que trust* shall not be destroyed or their estate defeated. It is clear that the court possesses this power, and that it will exercise it, unless it positively appears that the estate or interests of the reversioners are in no situation of danger or loss from any possible acts of the tenant. A very similar question arose in *Avery v. Judd*, 21 Wis. 264, where the general principle governing suits of this nature is stated. It seemed to me in that case, and for reasons stated in the opinion, that but for the statute the mortgagee there or his assignee could not maintain the action. I thought he could receive no possible detriment from the tax deed on record, or any acts of the grantee in possession, who was in subject to the mortgage and under legal obligation to pay the same, as appeared of record. But here the facts are very different, and the principle of that decision would require us to hold that this action can be maintained. It appears by the complaint that the premises in question were conveyed to the late wife of the tenant prior to her marriage with him, and by her maiden name of Grace Phelan. The conveyance to her was recorded about the time of its execution in the year 1850, but there is nothing of record in the register's office or elsewhere to charge a purchaser from the tenant with notice of his tenancy, or of the relation existing between him and the heirs with respect to the land. There is nothing of record to inform a purchaser of the tenant's subsequent marriage with Grace Phelan, or of her death, or that the plaintiffs are her heirs-at-law, holding an estate of inheritance subject to the life estate. The tenant may represent, and that truly, that he has had peaceable and exclusive possession for three years next after the recording of the tax deeds. The tenant may also represent, and the purchaser in good faith

believe, that the tax deeds are his only and true source
of title.   There being nothing of record to disclose the
tenant's actual interest in the land as between him and
the heirs, or the limited estate which he has, and nothing
to put a purchaser upon his guard or charge him with
the duty of inquiring, he would take title from the
tenant discharged of all claim on the part of the heirs,
and their estate would be gone beyond all hope of
recovery.   This constitutes the best of grounds for the
interference of equity to prevent the anticipated mis-
chief.   The court will not permit the interests of the
heirs to remain in such jeopardy, when appealed to in
their behalf for aid.   *Daviess v. Myers*, 13 B. Monroe,
512, above referred to, was an action of this kind.   The
tenant for life had purchased the property at a sale
under execution made to enforce payment of a debt
which was a charge or incumbrance upon the life estate
as well as upon the reversionary interest.   Upon a bill
in chancery filed for that purpose, it was decreed that
the title of the tenant for life should vest in the
reversioner upon payment by the latter of his ratable
proportion of the purchase-money advanced by tenant.
In that case the tenancy had expired by the death of
the tenant, who was a dowress, and the controversy
arose between the owner of the reversionary interest
and the devisee of the dowress.   And in this case the
judgment probably should be, that, upon contribution
by the reversioners of their proportion of the sums paid
by the tenant in procuring the tax deeds or title under
them, and thus discharging the incumbrance which
existed upon the land, the title of the tenant should
vest in the reversioners, subject, however, to a con-
tinuation of the life estate of the tenant, the same as if
no such judgment had been rendered.   Such judgment
should be recorded in the office of the register of deeds.
The rule of contribution, or mode of apportioning the
payment between the tenant and the reversioners, need

not be examined here.   It is discussed by Judge STORY, 1 Eq. Jur. §§ 486 *et seq.*, and the authorities fully collected; and also by Mr. Washburn, 1 Real Prop. (3d ed.) 110–112.

It is suggested by counsel for the tenant, that he had the right to take the deeds, and has the right to hold them, for the protection of his own estate.   Conceding this to be so, he will not lose the protection by the judgment.   He may avail himself of the title for that purpose as well after the judgment as before, and, for that matter, if there be any doubt, the judgment may expressly so provide.

The special relief demanded in the complaint with respect to the unrecorded deed from the defendants *Cook and wife*, should also be granted, the facts being established as alleged in the complaint.   This follows from what has already been said.   The tenant has no right to withhold the deed from record to the vexation and annoyance of the reversioners, or so as to disturb their title or right to the estate in remainder.   He should be required to put the deed on record, and his title, except the life estate which he has without the deed, should be vested in the remainder-men as above indicated.

As to the other acts complained of against the tenant — that he has neglected and refused to pay the taxes which have been assessed and fallen due upon the premises since the commencement of his life estate; that the same have been several times sold for the non-payment; and that the plaintiffs, or one of them, has been obliged to redeem from the sales of one year in order to save the inheritance, and will be obliged to do so from the sales of other years unless the tenant is compelled to pay, which he now refuses — it is not, perhaps, very clear that these, separately considered, constitute the proper subjects of equitable aid or interference.   It is very clear, from all the authorities, that suffering the premises to be sold for taxes accruing during the tenancy or term is an

act of waste.    It is the duty of the tenant for life to cause
all taxes assessed upon the estate during his tenancy to
be paid; and, if he neglects, thereby subjecting the estate
to sale, an action at law for waste may be maintained
against him.    *Stetson v. Day*, 51 Maine, 434; *McMillan
v. Robbins*, 5 Ohio, 28; *Namey v. Stevens*, 22 Maine, 331;
*Prettyman v. Walston*, 34 Ill. 192.    And in this case, the
plaintiffs might have sued under the statute, and obtained
judgment for double the amount of damages found by
the jury.    R. S., ch. 143, §§ 1 to 6 inclusive.    But in
*Cairns v. Chabert*, 3 Edw. Ch. 312, a bill in equity was
sustained against the tenant for life to restrain the dispo-
sition of property, and to compel the tenant to keep
down assessments and taxes; and, upon motion, an
order was entered for the appointment of a receiver of
so much of the rents and income of the estate as should
be necessary to pay off the taxes in arrear, unless, within
forty days from service of a copy of the order, the tenant
should show to the satisfaction of the master that the
taxes had been paid.    It would seem from this that the
non-payment of taxes by the tenant constitutes substan-
tive ground for relief in equity, notwithstanding the
remedy at law to recover damages for the waste.    And
there may be good reason for this.    The remedy at law
may be, and no doubt often is, inadequate.    The tenant
may be insolvent, or other circumstances exist, rendering
the judgment for damages of no value.    But whether
equity will in general give relief or not upon this ground
alone, it is clear that it can be granted in this case.    The
jurisdiction having attached for the purpose of removing
the obstructions unlawfully thrown in the way of the
title of the reversioners, the court will proceed to a final
settlement and disposition of all matters in controversy
between the parties respecting the estate.    It will restore
the inheritance of the plaintiffs as it would have been
had the tenant been guilty of no wrong or default; and,
to that end, will compel him to refund the money paid

by them to redeem from the tax sales, together with the interest, and himself to redeem from the sales now outstanding, and perhaps to give security for the payment of taxes in the future. His conduct has certainly been very reprehensible and unjust.

With respect to the other ground of demurrer alleged, that several causes of action have been improperly united, we do not dwell upon that, as counsel have not. If a good cause of action had been stated in favor of the plaintiff *Martin Phelan*, as administrator of the estate of Grace Boylan, deceased, he being joined as plaintiff in that capacity as well as heir-at-law or reversioner, there might be force in the objection. But as it is, we make no account of such joinder, but treat it as an action by the plaintiffs as heirs-at-law and reversioners alone.

One further observation is perhaps necessary, in order to correct what seems to be an erroneous impression on the part of counsel for the plaintiffs. He seems to suppose that the commission or suffering of waste is attended by forfeiture of the estate of the tenant, and that the reversioners may enter and hold possession. A part of the relief asked in the complaint is, that the tenant forthwith vacate and surrender the possession of the premises to the plaintiffs. In Maine and Ohio, as will be seen by the cases above referred to, the tenant forfeits his estate. But this is by statute. And in England, by the statute of Gloucester, 6 Edw. I, c. 5, not only the place wasted was forfeited, but also treble damages. That statute was held, in *Sackett v. Sackett*, 8 Pick. 307, to have been adopted as part of the law of Massachusetts. But the statute of this state, which makes full regulations upon the subject, contains no such provision, and consequently there can be no forfeiture.

*By the Court.* — The order is reversed, and cause remanded for further proceedings according to law.