Melms and others, Respondents, vs. The Pabst Brewing Company, Appellant.

*February 3 — May 1, 1896.*

*Wills: Election by widow to take under the law: Homesteads: Attempted conveyance of fee by life tenant: Covenant by grantee to discharge incumbrances: Acquiring outstanding title: Rights of remaindermen: Contribution.*

1. A widow who, pursuant to secs. 2171, 2172, R. S., elected to take the provision made for her by law instead of the provision made for her in the will of her husband (which gave to her all his property, but did not show that he intended she should take both under the will and at law), took only a life estate in his homestead, and the fee thereof descended to his heirs the same as though no will had been made.

2. The real estate of a testator, consisting of his homestead and a brewery property, was heavily mortgaged, and his unsecured debts were large. His will gave all his property to his widow, and expressed a desire that, if possible, his business should be continued by her and his debts paid out of the same. *Held,* that this did not show an intent that she should take both under the will and at law, it being his evident intention that the brewery property should be kept together and used in its entirety to carry on the business.

3. A case for an election under secs. 2171, 2172, R. S., was presented, although a will gave all the testator's property to his widow, where if she took under the will the entire property would be consumed in the payment of mortgages and unsecured debts, but if she took under the law she would have a life estate in the homestead and a dower estate in the remaining lands free of claims for unsecured debts.

4. A widow having an estate during widowhood in a homestead gave a warranty deed of the premises, the grantees covenanting to pay a part of the consideration by paying and extinguishing certain incumbrances, including a certificate of foreclosure sale. The grantees, however, took an assignment of such certificate and afterwards obtained a sheriff's deed thereon. *Held*, that they were tenants for life in possession and cannot assert the title so acquired as against the remainder-men.'

5. Where, in such case, the public records showed that the widow had a life estate only, her grantees, even though they supposed that they were obtaining the fee, cannot compel the remainder-men to contribute any portion of the amount paid in discharging or purchasing any part of the incumbrances which, as a part of the consideration, they had covenanted to discharge. MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: FRANK M. FISH, Judge. *Affirmed.*

This is an action to remove a cloud from the title of certain realty in the city of Milwaukee. The facts are without dispute, and are substantially as follows:

Charles T. Melms died February 19, 1869, leaving a widow and seven children, of whom the eldest was twenty and the youngest three years of age at that time. He owned a tract of land in the city of Milwaukee, of which the northern portion was occupied by a large brewery. On the southern portion, facing the south, he had constructed a large dwelling house, which was his homestead. The brewery and homestead were heavily mortgaged at the time of his death, and his unsecured debts amounted to about $100,000 over and above the mortgages. By his will he gave all his property to his wife, and appointed her guardian of their minor children, and also appointed her and his brothers William and Leopold his executors, with the express desire that, if possible, his business should be continued by his wife and his debts paid out of the same. The will was proven in March, and the executors and executrix were thereupon appointed and gave the required bond. The widow sought to carry

on the business for a time, but in a few months apparently became convinced that she could not do so. She then caused to be surveyed a piece of land ninety feet square, in the center of which the dwelling-house or homestead stood, and connected this with the street to the south by a strip forty-five feet wide and sixty feet long, making in all an exact quarter of an acre. This is the piece of land involved in this action, and from which the plaintiffs asked to have certain clouds on the title removed. Mrs. Melms then, on the 15th of November, 1869, by petition in writing, made application to the county court of Milwaukee county, stating that she had become convinced that the estate had become insolvent and would have to be sold for the payment of debts, waiving the provision made for her in the will of her husband, and praying that the homestead, described above, be set apart to her, and that her dower be assigned and the statutory allowances made to her, all of which was done by order of the county court, dated November 19, 1869.

November 23, 1869, William and Leopold, as executors, made petition to the county court for license to sell the real estate, representing that the debts of the estate amounted to $104,000, besides such as were liens on the real estate; that the personal property was only of the value of $32,000. License was granted under this petition, and thereafter the sale was had of the whole brewery and premises, excepting the homestead above described, and the same was bid off in the name of Jacob Frey, subject to the incumbrances thereon, for the sum of $379.50. This sale was confirmed by the court May 25, 1870, and a deed of the premises was made by the executors on the same day. It appears as a matter of fact that this sale to Frey was a mere sham, and that Mrs. Melms was the person for whose interest the purchase was made, and Frey took the title merely as a cover. Mrs. Melms immediately made effort to sell both the brewery and the homestead, and on the 1st of November, 1870,

she and Frey made a written agreement with Friedrich Pabst
and Emil Schandein, whereby they agreed to sell and con-
vey to them by warranty deed the entire premises, includ-
ing the brewery and homestead, for the sum of $95,000.
This consideration was to be paid: as follows: $30,000 by
paying and discharging an existing mortgage on the prop-
erty to one Baker; $40,000 by the execution and delivery
of a mortgage of that amount on the property by Pabst
and Schandein; and the remaining $25,000 by paying and
extinguishing two certificates of sheriff's foreclosure sale of
that amount upon the whole property, upon which certifi-
cates deeds would be due in June or July of the following
year.   This agreement was carried out by Pabst and Schan-
dein in all respects according to the contract, except that,
instead of redeeming the $15,000 certificate of sheriff's fore-
closure sale, they took an assignment of it from the holder,
and in July, 1871, received a sheriff's deed covering the
whole brewery and homestead property.   Mrs. Melms and
Frey had previously given Pabst and Schandein a warranty
deed covering the entire property.   Pabst and Schandein
had conveyed the entire property to the *Pabst Brewing
Company* prior to the commencement of this action, of
which company Pabst and Schandein were officers and prin-
cipal stockholders.   It appears that the *Pabst Brewing
Company* claims to own the homestead property in fee
under the deed from Mrs. Melms and the sheriff's deed on
foreclosure.

The prayer of the complaint is that both the will of said
Charles T. Melms, in question, with the said deed from Frey
and Mrs. Melms, and the said sheriff's deed to Pabst and
Schandein, so far as the homestead property is concerned,.
be adjudged null and void, and that it be decreed that the
defendant holds said homestead premises only as tenant for
life of Mrs. Melms, subject to the estate in fee in remainder
of the plaintiffs therein.   The circuit court granted the re-

lief substantially as prayed for in the plaintiffs' complaint, and from that judgment defendant appealed.

For the appellant there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* counsel, and oral argument by *F. C. Winkler.* They contended, *inter alia,* that Pabst and Schandein entered into the possession under a warranty deed purporting to convey to them the entire title in fee. They unquestionably believed themselves to be purchasers of such a title. They recognized no title to which theirs was subservient. They stood in no conventional relation to any outstanding title. They were under no obligation to protect one. The relations of landlord and tenant, mortgagor and mortgagee, tenancy of particular estates, tenants in common, etc., produce certain disabilities in acquiring outstanding titles. But these disabilities only apply where the party concerned has *entered in recognition of the estate* by reason of which the disability is imposed. It applies " generally to all cases where one man *obtains possession* of real estate belonging to another *by a recognition* of his title." Tyler, Ejectment, 811. Where there is neither privity nor convention between them, nor recognition of title, it does not apply. *Wright v. Sperry,* 21 Wis. 336; *Frentz v. Klotsch,* 28 id. 312; *Sydnor v. Palmer,* 29 id. 226, 249, 250; *Stevens v. Brooks,* 24 id. 326; *Whitney v. Morrow,* 34 id. 644; *Bradstreet v. Huntington,* 5 Pet. 402, 443, 444; *Prescott v. Nevers,* 4 Mason, 326; *Jackson v. Smith,* 13 Johns. 406; *Jackson v. Harsen,* 7 Cow. 323; *Christie v. Gage,* 71 N. Y. 189, 193, 194. Where one enters under a deed which purports to convey to him the entire estate, although his grantor may have had but a limited interest, his entry and possession are hostile in character, and he is not affected by the disability of the grantor. *Jackson v. Smith,* 13 Johns. 406, 413, and other cases above cited. It is true that when, in such case, the grantor was possessed of a particular estate, entitling him to possession, the grantee's possession is not adverse to the remainder-man

or reversioner, in the sense that it sets the statute of limitations running during the continuance of the particular estate. *Barrett v. Stradl*, 73 Wis. 385; *Wiesner v. Zaun*, 39 id. 189. That is a necessary exception to the rule. Its reason is obvious. But the exception extends no further than the necessity and its reason. Even where a party's possession is in no sense adverse he may acquire an outstanding title as against the true owner, where there is no privity of contract between him and the true owner. *Link v. Doerfer*, 42 Wis. 391, 395; *Blackwood v. Van Vleit*, 30 Mich. 118; *Jackson v. Thomas*, 16 Johns. 293. There is certainly no rule of equity which required Pabst and Schandein, as against the plaintiffs in this case, to discharge the incumbrances on the property. They had agreed to do this only on the counter-agreement that a full and complete title in fee simple be conveyed to them. It is only as against a party who has an equitable claim for its extinguishment, that a party in possession is ever estopped from setting up an outstanding title he may have bought in.

For the respondents there was a brief by *Francis Bloodgood*, of counsel, and *Bloodgood, Bloodgood & Kemper*, attorneys, and oral argument by *Francis Bloodgood*.

The following opinions were filed February 18, 1896:

WINSLOW, J. But two questions were seriously argued by the appellant: (1) Whether Mrs. Melms lost the fee to the homestead by the filing of her petition of November 15, 1869; (2) whether the defendant can assert title as against the heirs under the sheriff's deed on foreclosure.

1. It is argued that in some way Mrs. Melms's election to take under the law and not under the will did not affect the devise of the homestead, but that she retained title to the homestead under the will, while taking dower and personal property under the law; thus taking partly under the will and partly under the law. Secs. 2171, 2172, R. S., seem

very clear on this subject. Sec. 2171 provides that when lands are devised to a woman, or other provision made for her in the will of her husband, she shall elect whether she will take under the will or under the law (not whether she will take partly under the will and partly under the law), but that she shall not have both unless such plainly appears by the will to have been the intent of the testator. Sec. 2172 provides for the filing of the notice of such election in the county court within one year from the husband's death, and then provides that "upon filing such notice she shall be en-titled to the same dower in his lands, *and the same right* to the homestead, as if he had died intestate leaving lawful issue, and the same share of his personal property as if he had died intestate."

In treating of this very will and election in the case of *Melms v. Pfister*, 59 Wis. 186, it was said by the present chief justice that by the filing of the election "the will immediately became inoperative as to the real estate, the title of which at once upon such election, if not upon the testator's death, became vested in his heirs, subject to the mother's right of dower and the payment of the testator's debts. From that time forth, at least, the real estate must be regarded the same as though no will had ever been executed." Although the question as to the title to the homestead was not involved in that case, we are entirely satisfied that the same principles are applicable, and that from the time of the election the homestead also "must be regarded as though no will had ever been executed."

The claim is made that the will shows that it was the intent of the testator that his widow should take both under the will and at law, because the will gives her the entire property. It is true the will gives her the entire property, but, as to all the real estate except the homestead, she must take it (if she takes it under the will) subject to the payment of unsecured debts of the deceased, which amounted to about

$100,000. If she took under the will she could claim no dower in it. Now the will shows on its face that it was the intention of the testator that this entire property should be kept together. He gives her all his property, and desires that, if possible, his business should be continued by her and his debts paid out of the same. Manifestly it was not his intention that a dower estate be carved out of the brewery property by his wife. It would necessarily have to be kept together and used in its entirety in order to carry on the business and fulfill the wishes expressed in the will.

Again, it is said that this is not a case of election, because an election " is the choosing between one property and another, not the accepting of the whole or a part only of what is willed." The argument is specious, but not to our minds sound. Here were certainly two alternatives between which she might elect. If she took under the will, she took a fee in the homestead, subject to the mortgages thereon; also a fee in the brewery property, subject to the mortgages and the payment of the debts of the deceased. The evidence plainly shows that the mortgages and unsecured debts would at that time consume the entire property. Under the law as then existing, and until the passage of ch. 133, Laws of 1870, it seems that the unsecured creditors could have insisted on the mortgage creditors first exhausting their security on the homestead. *Hanson v. Edgar*, 34 Wis. 653. They would have swept the homestead, and the unsecured creditors would have swept what was left of the nonexempt property, and the result would have been that Mrs. Melms would have received nothing save such allowances or interests in the personal estate as were preserved to the widow in cases of testacy and intestacy alike. On the other hand, if she took under the law, she took a life estate in the homestead, subject to the mortgages (which, under the circumstances, was intrinsically fully as valuable as a fee), and she could take free of claims for unsecured debts her dower es-

tate in the remaining real estate. Whether this estate was more valuable than the one given her by the will may have been a question not easy to decide; but, however that may be, it was certainly an essentially different estate from the one given by the will, and there was plainly an opportunity for an "election," or, in other words, a choice between two different things.

As the result of the election, the homestead descended to the plaintiffs, the children of the testator, subject to the life estate of the widow therein.

2. The fact being that Mrs. Melms had only a life estate in the homestead, or, to be more exact, an estate during widowhood, when she made her deed to Pabst and Schandein, the necessary consequence is that Pabst and Schandein acquired that estate and no more by that deed; and the question whether they can insist on their title under the sheriff's deed remains to be considered. They agreed, both in their agreement to purchase and by the covenants of the warranty deed, that they would pay and extinguish the sheriff's certificate of sale to the amount of $15,000; but instead of doing so they took an assignment of the certificate and obtained a deed of the entire brewery and homestead premises. Can they assert this title successfully against the heirs? We think not. Mrs. Melms was a tenant for life in possession. Pabst and Schandein acquired her estate, and became tenants for life in possession. *Barrett v. Stradl,* 73 Wis. 385. If such a tenant purchase an incumbrance upon the estate, he cannot set up title under it as against his remainder-man, but is considered as holding it in trust for the joint benefit of himself and of the remainder-man. This principle is firmly established, has been adopted by this court, and needs no vindication now. *Phelan v. Boylan,* 25 Wis. 679. It is therefore certain that Pabst and Schandein cannot use this deed to cut off the title of the remainder-men, but that, if they are entitled to make any use of the

Melms and others vs. The Pabst Brewing Co.

title, it must be simply to compel the remainder-men to contribute their proportion of the incumbrance paid. *Phelan v. Boylan, supra;* 2 Pomeroy, Eq. Jur. § 799. But we think they are precluded from doing this, and for a plain reason. They bought the title of Frey and Mrs. Melms for the agreed price of $95,000. It is true they apparently thought that they would secure a fee in the homestead, but that was a matter of their own lookout. The public records showed what Mrs. Melms's title was, and that it was a life estate only. Therefore, they were charged with knowledge when they bought that they were buying a fee in the brewery property and a life estate in the homestead. For these they contracted to pay, and did pay, $95,000. Part of this $95,000 they agreed to pay, and did pay, in a particular way; that is, by paying off an incumbrance. Now, they say: "True, this was a part of the consideration; true, we agreed to pay and discharge it for the benefit of Mrs. Melms, and incidentally for our own benefit; but Mrs. Melms did not give us title to the fee, as we expected she would (though we had no right to expect it); hence we will recoup from the heirs the damages which we have suffered by reason of our bad bargain with Mrs. Melms. We will make them pay back to us a part, at least, of the consideration money which by our agreement we paid to Mrs. Melms." Stripped to its ultimate conclusion, this is simply an attempt to recover from the remainder-men a part of the consideration paid to the life tenant for the life estate. Had they purchased the life estate, paid the consideration therefor, and gone into possession, and afterwards paid the mortgage to protect their estate, they might invoke the rule laid down in *Phelan v. Boylan;* but when they paid the mortgage simply as a part of the consideration for the life estate which they purchased, it is wiped out as to all parties. They cannot revive it as a claim against the remainder-men any more than they can claim that the remainder-men should

reimburse them for any other part of the consideration which they paid Mrs. Melms and which they now think they ought not to have paid her because she did not give them title to the fee.

There are no other questions which are seriously urged or which require attention. A supplemental case was printed, but it was not necessary. No costs will be taxed for it.

*By the Court.*— Judgment affirmed.

MARSHALL, J. With the decision of this court to the effect that Mrs. Melms's election not to take under the will placed the title to the homestead in plaintiffs, subject to their mother's life estate, and that defendant cannot use the sheriff's deed, obtained on the certificate which it was agreed should be redeemed out of the purchase money, to cut off plaintiffs' title I fully agree; but from the conclusion that by the deed from Mrs. Melms to Pabst and Schandein, and the use of the consideration that measured the full value of the property to pay off the incumbrances thereon so far as necessary to discharge or purchase the same, they obtained no other interest in such property than the mere life interest of their grantor, I respectfully dissent, and, without entering into any very extended discussion of the matter, I will state my reasons therefor.

The law is well settled that a life tenant, or any person having a partial interest only in land, is not bound to pay off a charge or incumbrance on the title; that if such life tenant pays off such charge or incumbrance he is presumed, to do so for his own benefit, and, though such charge or incumbrance be in form discharged, in fact it is kept alive for his benefit, protection, and reimbursement. In all such cases, in the absence of proof to the contrary, the presumption is that the intention of the life tenant was that the lien should be preserved, and a court of equity will give effect to such intention. In 2 Pomeroy, Eq. Jur. § 799, treating

Melms and others vs. The Pabst Brewing Co.

of this subject, it is said, in effect, that the payment of the mortgage constitutes the life tenant the equitable owner of an interest in the property to the extent of the incumbrance thereon, which he may hold for reimbursement over and above the proportion of the debt which he was bound to contribute. The interest so acquired will pass by deed of the life tenant to his grantee. *Whitney v. Salter*, 36 Minn. 103. In the case cited, the following language is used: ' The life tenant who pays off the charge *will be subrogated to the rights of the parties who held such charge, and he will be entitled to hold the property until the other interested parties pay their share. He and those claiming under him occupy a position analogous to mortgagees in possession after condition broken, who cannot be ejected until all sums due on the mortgage have been paid.'*

To support the above-stated propositions, no citation of authority is necessary. They are elementary. And it follows that the conveyance from Mrs. Melms to Pabst and Schandein, and the taking up or payment of the incumbrances out of the purchase money, gave to them the life estate of their grantor, and also vested in them, by actual or equitable assignment, all of such incumbrances; and their grantee, the defendant, is entitled to enforce the same against the plaintiffs' interest in the property to the amount or proportion which they should contribute according to the settled rules of equity jurisprudence pertaining to the subject, unless there is something in the deed or contract pursuant to which it was made, not heretofore referred to, which renders inapplicable these principles.

It is said that Pabst and Schandein are chargeable with knowledge of the fact that Mrs. Melms had but a life estate, which is quite true, but that by no means prevented the passage to them, by force of the covenants in her deed, of all interest in the property acquired by her after the giving of the deed, or their becoming owners by equitable assign-

ment of the incumbrances paid off by them out of the purchase money pursuant to the contract. Taking the deed in connection with the contract, it is quite clear that, in effect, it transferred the property to Pabst and Schandein, subject to the incumbrances, for the amount mentioned in the deed less the amount which they agreed to pay in discharging such incumbrances; for, while the sum of $95,000 is mentioned in the deed as the consideration, and the conveyance was made subject to the incumbrances, it was stipulated in the contract that such consideration should be used to discharge such incumbrances.

That the intention of the parties to the contract was that Pabst and Schandein should become the owners of the full title to the property, and necessarily of the incumbrances which formed a part of the title, covered by the consideration named in the deed, appears from the contract so clear as to be beyond all reasonable doubt. It was agreed that the title in fee absolute, subject to the incumbrances, should be conveyed; that such incumbrances should be paid out of the $95,000 agreed upon as the purchase price for all, including the brewery property. It was provided that the amount necessary to redeem from the certificates might be placed with a depositary; and, referring to that portion of the contract on this subject, the following language is used: "The object being to secure to both parties the payment of the amount necessary to redeem said certificates." The contract further provided as follows: "*The title to all such real estate shall be conveyed free from all incumbrances whatever, except as herein provided.*" The exception refers to the incumbrances which were to be paid out of the consideration named in the deed.

From the foregoing it follows, in my judgment, that defendant, in addition to the life estate formerly owned by Mrs. Melms, is the owner of the mortgages and incumbrances mentioned; that defendant is entitled to have all such in-

cumbrances kept alive for its protection, and to compel reimbursement by plaintiffs of the proportion of the amount paid for such incumbrances, over and above the amount chargeable to the life interest, such amount to be determined according to the settled rules of equity jurisprudence pertaining to the subject; that plaintiffs' rights are the same as if their mother had retained the life interest and paid off the incumbrances; no greater and no less. They are not chargeable with interest or taxes or any sum paid out to improve the property, but are chargeable with their proportion of the principal of the debt as it existed at the time the inheritance came to them, and which has been paid off by the owner of the particular estate which must terminate before their right of entry can vest. 1 Washb. Real Prop. 95, 96; 6 Am. & Eng. Ency. of Law, 882; *Estabrook v. Hapgood*, 10 Mass. 313.

The judgment should be reversed, and such proceedings be had that a decree may be entered as here indicated, and proper directions be made to secure that end.

A motion by the appellant for a rehearing was denied May 1, 1896.