**BRYSON v. CONNECTICUT GENERAL LIFE INS. CO. et al.**
No. 9699.

Court of Civil Appeals of Texas. Austin.
March 3, 1948.

Rehearing Denied April 14, 1948.

Holloway, Crowley & Hudson, of Fort Worth, and Scott Snodgrass, of San Angelo, for appellant.

Hamilton, Dyer & Shults and Adair Dyer, all of Dallas, Sedberry & Williams, L. B. Harris, Upton, Upton & Baker, and Lee Upton, all of San Angelo, and De-Lange & Hudspeth, H. A. Berry, and Barnet B. Skelton, all of Houston, for appellees.

HUGHES, Justice.

The decision on the former appeal of this case is found in Tex.Civ.App., 196 S.W.2d, at page 532, in which case application for writ of error was refused by the Supreme Court.

We, therefore, accept as the law of this case all holdings made by this court upon the former appeal which are unaffected by the evidence introduced upon this trial. Rule 483, Texas Rules of Civil Procedure; Lone Star Gas Co. v. State, 137 Texas 279, 153 S.W.2d 681; Ohler v. Trinity Portland Cement Co., Tex.Civ.App. Galveston, 181 S.W.2d 120.

We will not make a complete restatement of the facts, but refer to the opinion on the first appeal which should be read for a full understanding of the nature of the case and our decision herein. We will make such statements as may be required for this opinion to be intelligible and for the purpose of disposing of issues which were not involved on the former appeal.

The first trial was upon exceptions, aided by a stipulation (which stipulation is also in the present record) as to uncontroverted facts. The exceptions were sustained, the suit dismissed, and upon appeal the judgment was reversed and the cause remanded for trial. A full trial ensued. The evidence, documentary and otherwise, covers 794 pages. More than 90 special issues were submitted to the jury, all of which were answered favorably to appellees.

The parties are the same as before, except that Grace Bryson, former wife of John Bryan Bryson, Sr., and mother of appellant, was made a party to appellees'. cross action against appellant.

The judgment is the same as before, differing only in form. On the first trial appellant's suit was dismissed by the trial

court in such manner as to constitute an adverse adjudication of his claim. On this trial appellees have recovered by affirmative judgment the "absolute title" to the lands involved.

Appellees by their first group of points (1–9) seek to sustain the judgment by urging (1) that this court erred in its former opinion in holding that when the father of appellant reacquired the lands by deed from his mother, the remainder in appellant was revested, and that we are at liberty to consider and decide the question anew; and (2) that in the light of evidence now before the court, not heretofore present or considered, we can and should reexamine such holding.

■ In support of (1) appellees cite Kempner v. Huddleston, 90 Tex. 182, 37 S.W. 1066, where the court, in answering certified questions, advised the Court of Civil Appeals that their opinion upon a former appeal of the same case was no bar to further consideration of the same questions upon the second appeal. That case differs from the present situation in that the Supreme Court had not approved the holding of the Court of Civil Appeals on the first appeal. No writ of error was applied for. We have no doubt but that we can reconsider our own opinions and, if found to be clearly wrong, overrule them. We have no such power over the opinions of the Supreme Court.

■ Appellees cite Clem v. Fulghum, Tex.Com.App., '58 S.W.2d 15, which holds that a Court of Civil Appeals is not bound on a second appeal by an opinion of the Commission of Appeals on the first appeal, there being a material change in the facts. Applying such rule we will consider the effect of additional evidence now before the court upon the holding ( (1) above) made in the first appeal.

It has been established by jury findings or by undisputed evidence that: (1) The 1910 deed was cancelled by Ellen E. Bryson in good faith, for her own benefit and pursuant to the provisions made in and accepted by the parties to such instrument and not for the purpose of enlarging the life estate of John Bryan Bryson, Sr.; (2) Ellen E. Bryson, after the cancellation of the 1910 deed, and before she reconveyed the premises to her son (who assumed payment of the note to be described), executed a deed of trust on the lands in suit, to the Nelson Loan Company, to secure the payment of her note in the sum of $30,000; and that most of this money was used for the purpose of paying notes owed by the son (father of appellant), on which his mother was liable as endorser.

These additional facts are material and are of importance in determining the question raised by appellant on this and the former appeal as to the character and extent of the title acquired or reacquired by Ellen E. Bryson, upon the cancellation of the 1910 deed, in that they negative any collusion between the mother and son with respect to such cancellation and show that they construed the transaction as vesting in the mother a full, complete, unencumbered and unrestricted fee simple title. This effect was assumed by the court upon the first appeal and is assumed here for the reasons stated in former opinion. This holding was and is to the advantage of appellees.

We are wholly unable to understand how these new facts affect the former decision as to the title acquired by the son upon the reconveyance by his mother.

Nor do we agree with appellees' further argument made under this group of points, that the interpretation of the pleadings and judgment in the Runnels County suit and the various deeds is affected by their unlimited introduction in evidence by appellant, for the reason that their construction is a matter of law for the court, and because the parties stipulated against admitting the legal effect of such instruments.

■ We, therefore, overrule appellees' points under consideration and adhere to the former holding that John B. Bryson, Sr., received only a life estate under the second deed from his mother.

Before the court for the first time are the following: (1) Appellees' pleas that they are good faith purchasers, for value and without notice; (2) that they have acquired title to the lands in suit by limitation; (3) that they are subrogated to the $30,000 Nelson loan; and (4) that they

are entitled to compensation for improvements made in good 'faith.

We will dispose of these matters in the order stated.

Bona Fide Purchasers.

We are of the opinion that this defense was adjudicated adversely to appellees upon the former appeal of this case, and that we are without authority to reconsider such decision.

The following count was sustained by this court:

"Second Count: The 1910 deed, its acceptance and possession thereunder by J. B. B., Sr., imposed upon him the legal duty to the remaindermen to pay the taxes and prevent any forfeiture of the remainder. Therefore, even though there was an effective forfeiture and revesting of the fee simple title in Elleri Bryson, the reconveyance in fee by her to him inured to the benefit of the remaindermen and had the legal effect of vesting in him only a life estate, and 'the remainder estate immediately revested and reattached thereto as fully as though said conveyance had specifically so provided.' "

The court thereafter concluded:

"We have reached the conclusion that the contention presented by the second count should be sustained; which conclusion renders unnecessary a consideration of the several contentions and countercontentions of the respective parties relating to the first and third counts. For our purposes in this regard it is assumed that the entire fee simple title vested in Ellen Bryson by virtue of the default of J. B. B., Sr., and the Runnels County judgment."

One of the "several contentions" made by appellees in the first appeal was:

"The Second Count alleges · no actual knowledge of the trust which plaintiff claims attached to the fee simple title when acquired by John Bryan Bryson, except the allegation that purchasers had notice from the record, and since, as to subsequent purchasers of the property subject to trust the person asserting the trust has the burden of establishing knowledge of such trust, and the public records were not sufficient to convey such notice, the

Second Count of plaintiff's amended petition states no cause of action or basis for recovery."

Appellees in their application for writ of error to the Supreme Court made these assignments:

"The Court of Civil Appeals erred in holding that ·even though there was an effective forfeiture of the estates or titles granted or created by the deed of May 4, 1910, and a revesting of the entire fee simple title in one of the Grantors therein, the reconveyance in fee by the owner of fee simple title to John Bryan Bryson, Sr., had the legal effect of vesting in him only a life estate and the remainder estate immediately revested and reattached in those who had a contingent remainder under the 1910 deed as fully as though the latter conveyance specifically so stated." (Par. 6, Appellees' Motion for Rehearing filed in Austin Court of Civil Appeals.)

"The Court of Civil Appeals erred in holding that a subsequent purchaser of land from a former life tenant under a deed with condition of reverter if life tenant fails to pay taxes is charged as a matter of law with notice that the life tenant could not acquire fee simple title to the land from his Grantor after fee simple title had reverted to and revested in the Grantor for failure of life tenant to pay taxes." (Par. 17, Appellees' motion for Rehearing filed in Austin Court of Civil Appeals.)

"Notwithstanding this clause and the holding on Page 8 of the opinion that the entire fee simple title vested in Ellen E. Bryson by virtue of the default and the Runnels County judgment, nevertheless the Court sustained and upheld the contention that the warranty deed from Ellen E. Bryson to John Bryan Bryson in 1921 vested in him only a life estate and vested 'the legal title in remainder in his children, as a matter of law, so that subsequent purchasers were charged with notice thereof."

In refusing a writ of error the Supreme Court · necessarily overruled these assignments, and .we are bound thereby.

The only new evidence as to this defense is that appellees had no actual notice of appellant's claim and that they

relied upon title opinions of reputable attorneys. These facts are immaterial if they were charged with notice as a matter of law.

*Limitation.*

The trial court submitted to the jury issues based upon the 3, 5, 10 and 25-year statutes of limitation, Arts. 5507, 5509, 5510 and 5519, Vernon's Ann.Civ.St., respectively, all of which were answered for appellees.

The 1910 deed from Ellen E. Bryson and husband to John Bryan Bryson conveyed a life estate in 5,000 acres of land, with remainder to his children and to other contingent remaindermen.

This deed was cancelled by judgment of the District Court of Runnels County on March 15, 1921, at the instance of Ellen E. Bryson (recorded in the Deed Records of Concho County, March 21, 1921). On May 2, 1921, she executed a deed of trust on the property to secure a $30,000 loan (recorded in Concho County May 27, 1921); and on July 15, 1921, she again conveyed the property to John Bryan Bryson, but this time by general warranty deed which purported to convey the full fee simple title. (Recorded in Concho County Deed Records, August 13, 1921.)

Appellant, the only child of John Bryan Bryson, was born October 12, 1923.

John Bryan Bryson, the life tenant under the 1910 deed, was alive at the time of this trial.

All appellees claim under John Bryan Bryson.

Appellees take the position that by reason of the above mentioned proceedings and instruments the various statutes of limitation were set in motion not later than March 15, 1921. If so, limitation title has been perfected under one or more of the statutes noted.

Appellant contends that since he is a remainderman after a life estate, which has not yet terminated, he has never had a possessory estate from the life tenant, and that such possession has never been adverse nor hostile to him, and hence a cause of action against appellees has never accrued to him. Appellant also urges his minority which did not expire until October 12, 1944.

If, as the court has previously held, John Bryan Bryson acquired only a life estate under the 1921 or second deed, then he could not lawfully convey more than he owned, but the deed was effective to this extent. Art. 1290, V.A.C.S. This Article expressly provides that: "Nor shall the alienation of any particular estate on which any remainder may depend * * * so operate as to defeat, impair or in anywise affect such remainder." •

It follows that when John Bryan Bryson conveyed by general warranty deeds to the various appellees, they acquired only the life estate owned by grantor, and the remainder to appellant was unaffected thereby.

■ Statutes of limitation only begin to run from the time the right of action accrues. Warnecke v. Broad, 138 Tex. 631, 161 S.W.2d 453. Although questionable for a time, it is now settled that this rule applies to Art. 5519, V.A.C.S., 25-year statute of limitation. Evans v. Graves, Tex.Civ.App. Dallas, 166 S.W.2d 955, Writ Ref. W.O.M.; Pool v. Sneed, Tex.Civ.App. Amarillo, 173 S.W.2d 768, Writ Ref. W.O.M.

■ Equally well settled is the doctrine that possession of one who holds the life estate is not adverse to one who holds title to the remainder. 2 Tex.Jur., p. 117; Rancho Oil Co. v. Powell, 142 Tex. 63, 175 S.W.2d 960. Such possession can only become adverse after the death of the life tenant. Rae v. Baker, Tex.Civ.App., 38 S.W.2d 366, 367 (Austin CCA. Writ Ref.); Olsen v. Grelle, Tex.Com.App., 228 S.W. 927, Opinion by Presiding Judge McClendon, present Chief Justice of this court.

■ Appellees all claim their titles under and through the life tenant, and even though the deeds from the life tenant purported to convey the fee and appellees took possession and claimed the full title thereunder, such claim and possession was not adverse to the remaindermen, and could not be until the death of the life tenant. Griffin v. Reynolds, Tex.Civ.App. Texarkana, 107 S W.2d 634 Writ Dis.; Cleav-

er v. Knighton, Tex.Civ.App. Beaumont, 127 S.W.2d 958, and authorities there cited.

Appellees cite several cases in support of the validity of their limitation title which they concede are not directly in point. We have examined these authorities and do not find that they are inconsistent with the principles above stated.

We, therefore, hold that appellees have not acquired limitation title.

*Subrogation.*

█ On the first appeal it was assumed by this court that Ellen E. Bryson became revested with a fee simple title to these lands following the forfeiture which was adjudicated by the District Court of Runnels County. This assumption was correct as a matter of law. The proceedings in that suit have on this trial been found to be free from fraud. The judgment there rendered decreed a forfeiture of the rights conveyed by the 1910 deed, the cancellation of such deed and recovery of title and possession of the lands by Ellen E. Bryson. The necessary legal effect of this unimpeached judgment was to vest in her a fee simple title (the title owned by her and her husband before the execution of such deed; and she having succeeded to the title of her husband) and placing her in the situation which she (and her husband) would have been in if the 1910 deed had not been made. 36 Tex.Jur., pp. 875, 876.

The deed of trust executed by Ellen E. Bryson to secure the Nelson $30,000 loan, when she owned the fee simple title to these lands, was a valid and binding instrument and the lien created thereby covers both the possessory and remainder estates. The payment of this debt was assumed by the life tenant in the 1921 deed from his mother. From this fact appellant argues that the debt became that of the life tenant and his assignees, and in paying the same they only paid their own debt, and that the doctrine of subrogation is applicable.

The life tenant and all of his assignees were charged, as a matter of law, with knowledge that they were acquiring only a life estate. The consideration paid or agreed to be paid by each of them was for the estate so acquired. McDonald v. Quick, 139 Mo. 484, 41 S.W. 208. In Melms v. Pabst Brewing Co., 93 Wis. 140, 66 N.W. 244, 246, where subrogation was sought under circumstances somewhat similar to those here presented, the court said:

" * * * It is therefore certain that Pabst and Schandein cannot use this deed to cut off the title of the remaindermen, but that, if they are entitled to make any use of the title, it must be simply to compel the remaindermen to contribute their proportion of the incumberance paid. Phelan v. Boylan, supra, [25 Wis. 679]; 2 Pom.Eq.Jur., § 799. But we think they are precluded from doing this, and for a plain reason. They bought the title of Frey and Mrs. Melms for the agreed price of $95,000. It is true they apparently thought that they would secure a fee in the homestead, but that was a matter of their own lookout. The public records showed what Mrs. Melms' title was, and that it was a life estate only. Therefore, they were charged with knowledge when they bought that they were buying a fee in the brewery property and a life estate in the homestead. For these they contracted to pay, and did pay, $95,000. Part of this $95,000 they agreed to pay, and did pay, in a particular way; that is, by paying off an incumbrance. Now, they say: 'True, this was a part of the consideration; true, we agreed to pay and discharge it for the benefit of Mrs. Melms, and incidentally for our own benefit; but Mrs. Melms did not give us title to the fee, as we expected she would (though we had no right to expect it); hence we will recoup from the heirs the damages which we have suffered by reason of our bad bargain with Mrs. Melms. We will make them pay back to us a part, at least, of the consideration money which by our agreement we paid to Mrs. Melms.' Stripped to its ultimate conclusion, this is simply an attempt to recover from the remaindermen a part of the consideration paid to the life tenant for the life estate. Had they purchased the life estate, paid the consideration therefor, and gone into possession, and afterwards paid the mortgage to protect their estate, they might invoke the rule laid down in Phelan v. Boylan; but, when they paid the

mortgage simply as a part of the consideration for the life estate which they purchased, it is wiped out as to all parties. They cannot revive it as a claim against their remaindermen any more than they can claim that the remaindermen should reimburse them for any other part of the consideration which they paid Mrs. Melms, and which they now think they ought not to have paid her because she did not give them title to the fee."

All of appellees seeking subrogation, except the Federal Land Bank which is a lienholder, were personally liable for all payments made on the Nelson loan. In McDermott v. Steck, Tex.Civ.App., 138 S.W.2d 1106, 1109 (writ ref.), this court pointed out the distinction between a grantee paying an encumbrance for which he was not liable and paying one for which he was liable, and quoted these rules:

"There are numerous decisions to the effect that where a purchaser buys land and takes a deed thereto, and subsequently pays a prior lien on the property which he is not primarily bound to pay, but which if not paid might cause him to lose his interest therein, he is subrogated to the rights and remedies of such prior lien, as against a lien which is superior to his title."

"When a grantee as part of the consideration for land assumes the payment of a mortgage or other lien against it, the payment of the indebtedness which the lien represents completely extinguishes the lien, and the grantee cannot be subrogated to the rights of the lienholder, nor keep the lien alive for any purpose."

The first quotation being from 25 R.C.L., p. 1353, and the latter from the syllabus in Harrison v. First Natl. Bank, Tex.Com. App., 238 S.W. 209.

The Federal Land Bank has the personal obligation of appellee Middleton to pay its debt. If this debt is paid the Bank would have no need for subrogation. Under these circumstances the Bank is not now in position to claim subrogation. 60 C.J., p. 719.

No right of subrogation exists.

*Good Faith Improvements.*

■ This is not a trespass to try title case. Appellant concedes that he is not now entitled to possession of the lands in suit and that he will have no right of possession until the expiration of the life estate. This is undoubtedly correct.

The right to sue for improvements made in good faith does not arise until there has been an eviction. There will be no eviction in this case before the termination of the life estate. It would be impossible to presently fix the value of such improvements as of the uncertain date of eviction. The improvements may not be in existence at such time.

Appellees' claim for improvements alleged to have been made in good faith has been prematurely brought and will be dismissed wi·· out prejudice.

We, therefore, conclude that the trial court erred in awarding appellees title to the lands in controversy and in denying appellant's several motions for judgment in accordance with his prayer, for which reasons we reverse the judgment of the trial court and render judgment for appellant, establishing in him a remainder in all the lands in paragraph 3 of his second amended original petition filed in this cause, and being the same lands described in deed from John H. Bryson and wife, Ellen E. Bryson, to John Bryan Bryson, dated May 4, 1910, subject only to the life estate of his father, John Bryan Bryson, and the conditional, contingent, or subsequent remainders as provided for in said deed.

Appellees' claim for good faith improvements is dismissed without prejudice.

Reversed and rendered.

HUGHES, Justice (concurring).

The action of the Supreme Court in refusing a writ of error on the first appeal of this case is the sole reason I do not dissent from the opinion of the court on this appeal. I believe the judgment on this appeal should be affirmed because the judgment on the first appeal should have been affirmed, but I find myself without authority to so hold because of the prior action of the Supreme Court, as indicated.

The Supreme Court has written no opinion in this case, although the legal effect of what it did is the same. Since some of

the parties have announced that this case is on its way back to the Supreme Court for a complete review, I feel it not inappropriate to express my views as to the former opinion of this court.

It is not so much with the rules of law reiterated or laid down in that opinion with which I disagree, it is with the application or non-application of those rules to the facts which I consider wrong.

Such former opinion is, in my judgment, fundamentally erroneous for the reason that the rules applicable to ordinary life estates and life tenants are held to be controlling, when we are dealing with no such estate, but have before us a defeasible estate, an estate subject to forfeiture for breach of a condition subsequent.

It is pure coincidence that a defeasible life estate is involved. It might have been any other kind of estate made upon condition subsequent, such as a fee simple estate, or an estate for years. The controlling principles of law would be the same.

In Davis v. Vidal, 105 Tex. 444, 151 S.W. 290, 293, 42 L.R.A.,N.S., 1084, the court quoted with approval the following from Dunlap v. Bullard, 131 Mass. 161, 163:

"'All that remains, after the gift or grant takes effect, continues in the grantor, and goes to his heirs. This is the right of entry, which, from the nature of the grant, is reserved to the grantor and his heirs only, and which gives them the right to enter as of their old estate, upon the breach of the conditions.' These considerations are equally applicable whether the estate subject to the condition subsequent is an estate in fee, or an estate for life or years."

The 1910 deed from Mr. and Mrs. Bryson to their son John, which is the source of this litigation, was a deed of gift conveying the lands to John and his heirs after his death, subject to "all the conditions, restrictions and limitations as the same are hereinafter specifically stated."

The deed contained these provisions:

"* * * provided however (during) his said lifetime he shall pay all lawful tax assessments of every kind which said premises may be subject, and shall personally keep the possession, use and enjoyment of the same * * *.

"In the event of the death of the said John Bryan Bryson without issue and in the event no default has been made up to the time of his death in the terms and conditions of the conveyance by reason of which said land has become subject to revert to us, then the use, control, possession and title shall revert to and vest in our other children * * *.

"* * * in the event John Bryan Bryson during his lifetime should default in any of the conditions, limitations and restrictions in this deed that are provided for his said life estate, or should he violate any of the term, conditions and restrictions upon him herein, then it is especially provided that the whole of said life estate and all the rights whatever herein conveyed to the said John Bryan Bryson shall immediately cease, and he shall vacate said lands and the same shall revert to us, or the one of us that may then be living, and we, or said survivor, shall have the right to reenter upon and take possession of said lands, and no interest, claim or title whatever shall pass to the children or descendants of the said John Bryan Bryson but we, or said survivor shall repossess and re-own said land, both as to possession and title to the fee as fully as if this instrument had never been executed."

A condition subsequent is one which operates upon some estate already created and vested, and which, if not performed, may defeat it at the election of the grantor. 12 Tex.Jur., p. 126.

It is academic to discuss whether there was an automotic reversion of title to the grantors in the above deed upon breach of its conditions, or whether affirmative action by grantors was required. The latter occurred as shown by the suit in Runnels County to enforce the forfeiture. Harrison v. Foote, 9 Tex.Civ.App. 576, 30 S.W. 838 (opinion by Williams, J.). This case also holds that actual reentry is not required to enforce a forfeiture. But, even so, this right of reentry is assignable. Perry v. Smith, Tex.Com.App., 231 S.W. 340, and as assignees of this right appellees have entered upon the premises.

It is unfortunate, because it tends to confusion, that by another coincidence, one of the conditions upon which continuance

of the life estate depended was the failure to pay taxes. Thus it was, in the former opinion, that the tax obligation was decided upon principles applicable to ordinary life estate. This was not error so long as the life estate continued, but, it is submitted, that the defeasance of this estate is another matter, controlled by other facts and principles, to-wit: the provisions of the 1910 deed and settled rules of law applicable to termination of estates upon breach of condition subsequent, regardless of the nature of such condition so long as it is not unlawful.

The 1910 deed is contractual in its nature and the grantees therein are bound by the terms of such contract. Greene' v. White, 137 Tex. 361, 153 S.W.2d 575.

This deed plainly provides for termination of the life estate before death of the life tenant and the effect of such termination, which stated effect is in accordance with what the law would be even if the contract had not so provided.

"A defeasance carries with it the idea of nullity; it is said to be a condition annexed to a deed, which, being performed, the deed is rendered null." Stayton, J., in Astugueville v. Loustaunau, 61 Tex. 233.

"An estate having been granted upon a condition subsequent, the estate or interest which remains in the grantor is termed 'a possibility of reverter' or 'right of reentry.' The condition having been breached, the right to the property reverts to the grantor and he becomes entitled to reenter and resume possession. The existence of this right results in defeating the estate conveyed to the grantee and reinvesting the grantor with the interest originally held by him, placing him in the situation he would have occupied if no conveyance had been executed." 36 Tex.Jur., pp. 875–876.

See Lumsden v. Payne, 120 Tenn. 407, 114 S.W. 483, 21 L.R.A.,N.S., 605.

Applying the principle that as between an ordinary life tenant and remainderman, the former is liable for taxes, the court, before, concluded that it was the duty of this life tenant to pay such taxes during his whole life.

This, I believe, to be the major error committed by the court on the first appeal.

This holding wholly ignores the provision of the deed and rules of law pertaining to the defeasible nature of this life estate.

I say that it is an unfortunate coincidence that nonpayment of taxes is one of the conditions upon which the life estate was subject to forfeiture. The nature of a lawful condition should not affect the rights of the parties, stipulated in the deed, and accorded them by law.

If the condition subsequent had been that the life tenant not marry, surely no court would hold that he was under a duty to the remainderman not to marry.

If the condition subsequent had been the support of grantor, there would be no duty to the remainderman to continue such support during the entire life of the life tenant, when the only penalty provided by the deed and by law is the loss of the life estate.

These illustrations could be extended ad infinitum, as the nature of such conditions is as numerous as the mind can concoct. Many of them pertain to the use to be made of the property or continued residence thereon. The only penalty for the breach of such condition is forfeiture. No right of specific performance rests in the grantor. 19 Am.Jur., p. 551.

Grantees in such instruments are not personally responsible for the performance of such conditions.

"And it has been held that where the agreement of the parties provides for the remedy by the reverting of the premises, the grantor ordinarily will be relegated to such remedy and equity will not compel performance by injunctive relief. As has been judicially invoked: 'It by no means follows, because a grantee consents to take an estate subject to a condition that he consents to obligate himself personally for performance of the condition.'" Tiffany, Real Property, 3rd Ed., Vol. 1, p. 364.

"A condition differs from a covenant. The legal responsibility for nonfulfillment of a covenant is that the party violating it must respond in damages. The consequence of the nonfulfillment of a condition is a forfeiture of the estate. The grantor may reenter and possess himself of his former estate. The court, in a

proper case, can enforce the specific performance of a covenant; but it cannot enforce the specific performance of that in a deed the nonperformance of which works a forfeiture of the estate." Sanitary Dist. of Chicago v. Chicago Title & Trust Co., 278 Ill. 529, 116 N.E. 161, 165.

In addition to the loss of the life estate by reason of his breach of a condition subsequent, the life tenant has suffered these penalties: He cannot purchase and own the property in fee; his own father and mother cannot give him the property in fee; they cannot will it to him in fee, and as to this property he is disinherited.

Then, too, there is to be considered the right of the mother, surviving grantor in the 1910 deed. She owned 5,000 acres of land in fee, unencumbered and unrestricted, yet, without any wrong upon her part, except perhaps misguided generosity, she is told by the courts that she cannot sell, give or will this property to her son to hold as his very own.

All this for the benefit of a gratuitous remainderman. As far as I know, a donee has never before been held to have such dictatorial power and control over a donor. Common decency demands that a gift, if it is to be received, be taken on the terms offered. The law should and does require no less.

Nor is the fact that appellant is an innocent grantee or remainderman of any moment. In Perry v. Rogers, 52 Tex.Civ. App. 594, 114 S.W. 897, 899, a will was involved which provided for other disposition of the property in the event the will was contested by the devisees. Some of the devisees contested the will, one did not, and he contended:

"It is insisted on behalf of appellant that, title to the 10 acres of land devised to him having vested in him, and he not having offered or attempted to 'change or break' the will, the judgment rendered is erroneous, in so far as it declares a forfeiture of his rights under the will, and fails to adjudge to him in the partition ordered the interest represented by the devise to him. Whether the contention should prevail or not depends upon whether the testator intended that the forfeiture clause in the will should so operate or not. For his intention must be held to control when to give it effect will not violate the law or contravene its policy."

The court held:

"That it was his intention that his surviving wife and their children should take his interest in the property to the exclusion of every other person, in the event the disposition made by him of the property should not be effective because not acquiesced in by one entitled to object thereto, we think was made as clear as language could evidence it by the will, which declared that in such an event: 'It is my wish and desire that the half interest that I hold and possess in all my estate, both real and personal, be given, and I hereby bequeath the same, to my present wife for the benefit of my sons, Oscar D. and Louis Perry, sons of my present wife by me.' The intention being plain, that to give it effect will operate to deprive devisees innocent of any attack on his right to dispose of the property of the benefit it conferred upon them furnishes no reason why his will should not be enforced as he intended it should be. The condition upon which such innocent persons should hold under the will not operating to violate the law, nor in contravention of good morals or public policy, the courts cannot do otherwise than enforce it. Within the bounds suggested the law conferred upon the testator full power freely to make any disposition he desired to make of his property. Having kept within those bounds, whether he exercised the right he possessed wisely or unwisely, justly or unjustly, is not for the courts to determine.

\* \* \* \* \* \*

"But we are of the opinion that, if it affirmatively appeared from the record that the will in the particular in question was unreasonable and unjust, the intention of the testator nevertheless being plain, we would have no right to revise or remake the will. 'When,' said a writer on the subject, 'a testator has made known his purposes in respect to his property by the use of plain and unambiguous language, though his purposes may seem unreasonable, unjust, or absurd to others, his will is its own expositor, and a law unto the

court, where it violates no principles of law or morality.'"

In Stewart v. Blain, Tex.Civ.App. Galveston, 159 S.W. 928, 930, the court applied the same principles to a deed, saying:

"The property was a gift or donation from Blanchette, and he had a right to make what conditions and limitations he chose."

In support of its holding that under the second deed from Mrs. Bryson the son, whose life estate had been forfeited, could only acquire a life estate and could not claim the fee against the former remainderman, the court, on the first appeal, cites and quotes from Vol. 1, Sec. 149, Property, Restatement of the Law, the quotation being at the bottom of page 539 of 196 S.W. 2d, last column.

That the rule there stated is applicable only to ordinary life estates is shown by reference to other sections of this same work.

Section 129 provides that subject to limitations stated in Section 130, it is the duty of the life tenant to pay current taxes.

Section 130 provides that the duties described in Section 129 "exist only to the extent that they are not negatived in whole, or in part, by the terms of the instrument which created the estate for life."

The rule is similarly stated in 31 C.J.S., Estates, § 47, pages 59, 60:

"A life tenant, in possession, enjoying the rents and profits, or those succeeding to his estate, must pay all the ordinary taxes on the property during the continuance of his estate, unless there is some agreement, or some provision in the instrument creating the estate relieving him of this liability."

All of the authorities cited by the court (1st col., second par., p. 540 of 196 S.W. 2d) in support of the text quoted from the Restatement involve legal or conventional life estates not subject to defeasance for breach of condition subsequent.

The 1910 deed fixed the rights of all parties thereto. Its language is too plain to admit of any doubt or call for any construction. The effect of the breach of its conditions is stated to be that the property shall revert to grantors both as to possession and title in fee "as fully as if this instrument had never been executed," and that "no interest, claim or title whatever shall pass to the children (appellant) or descendants of" the life tenant.

Appellant does not suggest that there is anything illegal or immoral about these provisions of the deed, and I perceive none. Courts should not rewrite this deed nor refuse to give it effect according to its clear and specific import.

The District Court of Runnels County by solemn judgment, spread upon the deed records of Concho County prior to appellees' purchases, cancelled this deed, and, in my opinion, it does not exist for any purpose.

The hardship and virtual disaster cast upon appellees by the course of this litigation is so shocking that, in my opinion, a reexamination of the entire case should be made.