**BRYSON v. CONNECTICUT GENERAL LIFE INS. CO. et al.**

No. 9556.

Court of Civil Appeals of Texas. Austin.

July 10, 1946.

Rehearing Denied Oct. 2, 1946.

Scott Snodgrass, of San Angelo, and Holloway, Hudson & Shirley and Luther Hudson, all of Fort Worth, for appellant.

H. A. Berry, of Houston, Hamilton, Dyer & Shults and Adair Dyer, all of Dallas, Sedberry & Williams, M. E. Sedberry, Upton, Upton & Baker, and Travis E. Baker, all of San Angelo, W. Clyde Odeneal, of Dallas, L. B. Harris, of San Angelo, Ashby & FitzGerald and F. C. Ashby, all of Midland (J. R. Wood and J. L. Walsh, Jr., all of Dallas, Seeligson, Cox & Patterson and J. J. Cox, all of San Antonio, and Albert J. DeLange and DeLange, Beman & Hudspeth, all of Houston, of counsel), for all appellees except John Bryan Bryson, Sr.

McCLENDON, Chief Justice.

This suit involves the proper construction of a deed executed May 4, 1910, recorded May 10, 1910, whereby John H. and Ellen E. Bryson (husband and wife) conveyed to their son John Bryan Bryson a life estate in some 5,000 acres of land in Concho County (their community property), with remainder to the latter's children or their descendants should any survive him, absent which to other stated remaindermen. The suit was brought by John Bryan Bryson, Jr., only child of John Bryan Bryson, for a declaratory judgment and other relief, against his father and various parties claiming ownership of or liens upon portions of the land under mesne conveyances from his father. There was a pre-trial hearing at which certain stipulations of uncontroverted facts were made and considered by the court in passing upon exceptions to the petition; which exceptions were sustained and final judgment was rendered denying any of the sought relief and dismissing the suit. The plaintiff has appealed.

For convenience we shall use the initials J. H. B., J. B. B., Sr., and J. B. B., Jr., to denote respectively John H. Bryson, John Bryan Bryson (his son and grantee of the life estate in the deed in question) and John Bryan Bryson, Jr., the plaintiff below

534

and appellant here, son of J. B. B., Sr., and grandson of J. H. B. and wife, Ellen.

The controlling facts, as disclosed by the petition and the pre-trial stipulations, are these:

J. H. B. (born April 6, 1853) and Ellen E. Bryson (born February 11, 1865) were married April 20, 1881, and had nine children, born in the respective years 1885,

1886, 1888, 1891, 1894, 1896, 1899, 1902, and 1904. J. B. B., Sr., was born July 24, 1896, was therefore nearly 14 years old when the deed was executed, and became of age July 24, 1917. Meantime, his father J. H. B., had died April 10, 1915. The pertinent portions of the deed are copied in Note below.[1] At the time of its execution J. H. B. was 57 years of age, and his wife was in

[1] Note: The granting and habendum clauses read:

" * * * in consideration of the sum of One Dollar, and other good and sufficient reasons inducing us herein as the same hereinafter appears to us from the Vendees herein, have given, granted and conveyed, and by these presents do give, grant, and convey unto our son, John Bryan Bryson, and his heirs after his death. the use, enjoyment, possession, and title in fee in the manner and order, and subject to all the conditions, restrictions and limitations as the same are hereinafter specifically stated, and not otherwise, the following described real estate:

* * * *

"To have and to hold all and singular the use, enjoyment, possession and title in fee to said John Bryan Bryson during his lifetime, and after his death to his children or their descendants, in the order and manner and subject to the conditions, restrictions and limitations now here set out and which are as follows:

"The said John Bryan Bryson is only to have a life estate in said premises and the title in fee to said premises is not to vest in or pass to him but he is to have the possession, use, control and enjoyment of the same during the period of his lifetime and shall be entitled to have and receive during said time all the rents, revenues or other profits and proceeds resulting from, and proceeding out of said real estate under his control and possession and the uses to which he applies it during his said lifetime; provided however his said life time he shall pay all lawful tax assessments of every kind which said premises may be subject and shall personally keep the possession use and enjoyment of the same and shall not have the power or authority to in any way dispose of or place in another the use, control enjoyment and possession of said premises, further than to utilize said lands or portions of it from year to year by making lease or rental contracts with tenants under him for grazing or agricultural purposes, said rental or lease contracts to at no time exceed the period of two (2) years. And this conveyance is subject to the additional provision, that as the said John Bryan Bryson is not yet twenty-one years of age, we, the said John H. Bryson and Ellen E. Bryson appoint and constitute ourselves, or the survivor of us, if one should die, before the said John Bryan Bryson becomes twenty-one years old, the agent and trustee of the said John Bryan Bryson and the possession of said land during said minority remains in us. or the survivor, as the agent and trustee and for the use and benefit of the said John Bryan Bryson during such minority and we or said survivor is to hold such possession for the use and benefit of the said John Bryan Bryson during said minority for all the purposes and uses provided herein for said ———— if he were now twenty-one years of age, and we, or said survivor shall operate, employ and utilize said land during said minority, as the trustee and agents of said John B. Bryson for the purpose of making the same produce a revenue from year to year and said revenue so produced shall be in our hands as such trustees and agents for the use and benefit of said minor and shall belong to said minor and we shall use and apply the same as we think best during such minority for the support, education and maintenance and sole use of said minor, and when said minor attains the age of twenty-one years, the actual possession and control shall pass from us or such survivor, as such agents and trustees and such possession, use, control and enjoyment shall be placed with said John Bryan Bryson after minority, and as such agents and trustees we shall pay over and deliver to the said J. B. Bryson any amount we may have on hand not expended during minority for maintenance, support and education as aforesaid and at which time he is to place the deed of record in the County where said land is situated, and begin the personal control, use and possession of the same as the same is set apart in said deed for his said use during his natural life.

"In the event of the death of the said John Bryan Bryson without issue and in the event no default has been made up to the time of his death in the term and conditions of the conveyance by reason of which said land has become subject to revert to us, then the use, control, possession and title in fee to the same shall revert to and vest in our other children and their descendants in equal proportions and subject to each and every condition contained in this deed in the order and manner and under all the conditions, and restrictions and especially as to the life estate only in our said other children, and the fee title going to their descendants as is prescribed

her 46th year. J. B. B., Sr., married his wife, Grace, November 28, 1920, and J. B. B., Jr., their only child was born October 12, 1923.

March 14, 1921, Ellen E. Bryson brought suit in the district court of Runnels County against J. B. B., Sr., and wife, Grace, to cancel the deed and recover the land there-

in this deed with reference to John Bryan Bryson and his children and their descendants and in the event John Bryan Bryson during his lifetime should default in any of the conditions, limitations and restrictions in this deed that are provided for his said life estate, or should he violate any of the term, conditions, and restrictions upon him herein, then it is especially provided that the whole of said life estate and all the right whatever herein conveyed to the said John Bryan Bryson shall immediately cease, and he shall vacate said lands and the same shall revert to us, or the one of us that may then be living, and we, or said survivor, shall have the right to reenter upon and take possession of said land, and no interest, claim or title whatever shall pass to the children or descendants of the said John Bryan Bryson but we, or said survivor shall repossess and re-own said land, both, as to possession and title to the fee as fully as if this instrument had never been executed; and should said default be made after our death, then the reversion shall be to his children or their descendants, if any, if not to our other children and their descendants.

"At the death of the said John Bryan Bryson having no children or their descendants, then all of the rights in said land herein granted to the said John Bryan Bryson together with the title in fee to said premises shall pass and be vested in the children of the said John Bryan Bryson, in the same proportion as they would have succeeded thereto under the laws of descent, and in the event of the death of any of said children at that time or thereafter leaving issue, then the part of said child shall pass to and vest in the descendants of said deceased child, subject however as to the interest so passing, that said children or their descendants shall not have the right or power to convey the title to any of said land until the youngest child of the said John Bryan Bryson shall have become of the age of twenty-one years, and at and after which time said children or their descendants, shall have and be the owners of the fee simple title to said land, in the order and proportion hereinbefore stated, and shall have the power and authority as the owners of the fee simple title to said land to sell and convey the same or the interest of either one in the same at that time as any absolute owner may sell and convey land; and when it is stated herein that they become the owners of the title in fee to said land, that expression is only intended to mean that this absolute fee title only vests in them when said youngest child shall become twenty-one years of age as above stated; and subject to said inhibition against

said sale until after that time, the said children or their descendants of the said John Bryan Bryson after the interest of the said John Bryan Bryson has passed to them as aforesaid, and until the youngest child of said John Bryan Bryson become twenty-one years of age shall have the right to the use, control, possession and enjoyment of the same in the proportion that would be cast by the laws of inheritance, and shall have the right to have the same partitioned to them respectively in order to enjoy the use, possession and enjoyment thereof, and the rents and revenues produced by the same in separate, and segregated parts in the same manner as joint owners and co-tenants of land have the right to have the same partitioned between them respectively; and all of the children, or the descendants of any child deceased of the said John B. Bryson, from the time his interest passes to them, and until the youngest child becomes twenty-one years old as aforesaid shall hold, use and enjoy said land either in the aggregate or as the same may be partitioned to them in separate proportion, under all the terms, limitations, conditions and restrictions that are herein imposed upon the use, enjoyment and possession of the same by John Bryan Bryson during the period of his use thereof, and in the event the said children of the said John Bryan Bryson or the descendants of any deceased child, shall in any way make default, or violate or not observe the conditions and restrictions under which they hold the possession and use of said land during said time, then the interest of such one so making default and violating said terms and conditions shall immediately cease, and said interest shall immediately pass to and vest in the other children of the said John Bryan Bryson or descendants of any deceased child in the proportions as if they took by inheritance under John Bryan Bryson, and they shall have the right to reenter upon the part and portion of said defaulting party and oust them therefrom, and the same shall revert to, and be owned by said other named parties under the same conditions.

"It is especially and expressly here stated, and declared that this instrument is not intended and shall not be considered, interpreted or construed as a will, for it is not intended as a will, but it is intended as a present passing of the interests in this land, to begin and take effect of the date of this deed, and this deed is delivered at its date, and it is to be understood, considered, interpreted and construed as a present conveyance of the land herein and as a present parting on our part with the title and possession and the vesting of the. same in the vendees herein, in the or-

in conveyed. The same day J. B. B., Sr., and wife, Grace, filed a waiver of service and entry of appearance in the suit, reading: "Now come the defendants, John Bryan Bryson and wife, Grace Bryson, in the above entitled cause and waive the issuance of citation to us in said cause and hereby accept service in said cause and submit to the jurisdiction of this court at this the March Term, 1921, thereof, and make our appearance in said cause at this term of Court in same manner and for all purposes, as if we had been duly cited for the full length of time required by law to answer herein."

The petition in that suit recites the execution of the deed, its record, etc.; that J. B. B., Sr., paid no consideration for the deed; that the deed and possession of the lands were delivered to him and he accepted the deed and went into possession of the lands, subject to all the conditions, limitations, etc., in the deed, and subject to the provisions thereof in favor of plaintiff and J. H. B. and the survivor of them, relative to reversion of title, one of the conditions being "that he should pay all lawful tax assessments of every kind to which said lands and premises might be subject"; that he had wholly made default in that condition in that he "has failed and refused, and still fails and refuses, and continues to still fail and refuse" to pay the state and county taxes on the property for the year 1920, which thereby became delinquent February 1, 1921, whereupon a penalty attached, and the amount of such taxes, which constitute a lien upon the land, was increased; that suit was being threatened to recover these taxes with foreclosure of the tax lien; that plaintiff will be forced to pay these taxes in order to prevent their collection by sale of the land; that J. B. B., Sr., "has not only failed and refused to pay said taxes, or any part thereof, but has declared and announced his intention and has the intention, to pay no part of said lawful taxes so assessed against any of said land, or that may be assessed against said land in future, and threatens to abandon, and now has the intention of abandoning said lands"; that by reason of these facts the life estate in these lands by J. B. B., Sr., has ceased, all his interest therein has been forfeited, and revested in plaintiff alone (J. H. B. having died in 1915 prior to said default); that while J. B. B. Sr., "is now married, and has been for a long time, he has no children and that, therefore, no potential right, title or interest in remainder, exists, in any person whomsoever."

Judgment was rendered March 15, 1921, cancelling the deed and all interests created thereby in the land, and reinvesting the fee title therein in the plaintiff. The judgment recitals are in conformity with the allegations of the petition. At the time the suit was filed all the other eight children of J. H. B. and plaintiff were living, several of whom had living children; none of whom was made party to the suit.

May 2, 1921, Ellen E. Bryson executed a trust deed upon the property to secure a loan of $30,000, due May 1, 1928; and on July 15, 1921, she conveyed the property to J. B. B., Sr., for the recited consideration of $10 paid, and the assumption and agreement to pay the $30,000 loan.

The instant suit was filed May 26, 1945, about seven months after J. B. B., Jr., became of age. All the defendants, except

der as herein stated, and subject to the conditions, limitations and restrictions herein, it being our purpose as shown in this deed and in like deeds of this date made to all of our other children, to absolutely part with the title and possession of this land and the land described in all the other deeds, and that possession, use, control and occupation and fee simple title may now pass to and be used, enjoyed and finally owned in fee simple by our said children and their descendants in the order and manner as is set out in this and said other deeds, we desiring in our lifetime to so convey the title, use and possession and final title of the land described in this deed and said other deeds of like date to our said children and their descendants, as to us seems best to the advantage of our said children and their descendants, and we especially now here provide that in the event either one of our said children or the descendants of any child should at any time ever attempt by any character of claim, or litigation of any kind to question or set aside the deed under which they hold or any deed under which any of the other shall hold, then the interest of said child or such descendants shall immediately cease and become null and void, and the interest of such one shall immediately revert to us or the survivor of us, and in the event of said time we both be dead then the interest of such one shall revert to the balance of the children or their descendants, named in the conveyance under which such an one contesting this deed or any of the other deeds made to any of our children, holds his interest."

J. B. B., Sr., are holders of record title or liens deraigned from J. B. B., Sr., subsequently to the conveyance to him by his mother.

The petition contains three counts which present substantially the following contentions:

First Count: The Runnels County judgment was not binding upon J. B. B., Jr., or other contingent remaindermen, and had the effect only of divesting J. B. B., Sr.'s, life estate and vesting it in Mrs. Ellen Bryson. Therefore, grantees under J. B. B., Sr., acquired only his life estate subject to the remainders created by the 1910 deed.

Second Count: The 1910 deed, its acceptance and possession thereunder by J. B. B., Sr., imposed upon him the legal duty to the remaindermen to pay the taxes and prevent any forfeiture of the remainder. Therefore, even though there was an effective forfeiture and revesting of the fee simple title in Ellen Bryson, the reconveyance in fee by her to him inured to the benefit of the remaindermen and had the legal effect of vesting in him only a life estate, and "the remainder estate immediately revested and reattached thereto as fully as though said conveyance had specifically so provided."

Third Count: The refusal to pay the taxes and forfeiture suit was a fraudulent scheme to divest the remaindermen of their title and vest in J. B. B., Sr., the fee simple title to the land; of which fraud those claiming under J. B. B., Sr., had actual and constructive notice.

We have reached the conclusion that the contention presented by the second count should be sustained; which conclusion renders unnecessary a consideration of the several contentions and countercontentions of the respective parties relating to the first and third counts. For our purposes in this regard it is assumed that the entire fee simple title vested in Ellen Bryson by virtue of the default of J. B. B., Sr., and the Runnels County judgment.

Appellees' countercontentions pertinent to the second count are in substance these:

1. The conditions in the 1910 deed (payment of taxes, etc., by J. B. B., Sr.) were conditions precedent to the vesting of any title thereunder whether for life or in remainder, and upon default therein no title vested or could ever vest under the deed.

2. Neither under the terms of the deed nor otherwise was any legal obligation imposed upon J. B. B., Sr., to protect the interest of remaindermen from forfeiture. The only consequence to him of his failure to fulfill the conditions was forfeiture of his life estate. He was therefore free, from whatever cause or motive, to comply or not with the conditions; and thereafter to acquire the fee simple title to the property, divested of every right of remaindermen under the 1910 deed.

Additionally, appellees contend that the remainders attempted to be created by the deed were void as being in contravention of the statute against perpetuities. This contention will be considered later.

It would not be profitable to burden this opinion with an extended citation or discussion of the many cases and standard texts bearing upon the construction of the varied language of different deeds as regards the question whether they import a condition precedent to vesting of title, or such vesting (in fee, for life, or otherwise) upon limitation or condition subsequent, or a mere covenant. Here, as in all other instances where a written document is to be construed, the intent of the author, when ascertained, governs. In such ascertainment the universally accepted primary rule (as formulated in Vol. III, § 242 of the ALI Restatement of the Law of Property) is: "The judicially ascertained intent of a conveyor is normally determined by the language employed in the conveyance, read as an entirety and in the light of the circumstances of its formulation."

Where, however, the application of this rule "does not banish all doubt concerning the conclusions to be drawn from such language and circumstances," then rules of construction may be resorted to, in aid of such ascertainment. The Restatement (§ 243) gives three such rules which favor that construction which (a) "conforms more closely to the intent commonly prevalent among conveyors similarly situated"; (b) "causes results which are more in accord with the public interest"; (c) "is legally more effective than it would be under any other possible construction." The comment under this section states that: "The construction which eliminates the condition precedent adopts the preference stated in Clause (a) for completeness of disposition; follows the preference stated in Clause (b) for early vesting; and accomplishes the greater legal effectiveness favored by the rule stated in Clause (c)."

Thus it will be seen that where, from the language of the instrument, when "read in its entirety and in the light of the circumstances of its formation," any ambiguity arises which, on the one hand, would import a condition precedent to the vesting of title, or, on the other hand, a present vesting subject to defeasance upon limitation or condition subsequent, the latter construction will prevail over the former.

██ But aside from these rules which embody the general policy of the law to favor the vesting of estates at the earliest possible moment and the creation of the greatest estate possible, consistent with the language employed (read in its entirety, etc.) and the construction of such language most favorably to that general policy; the language of the 1910 deed clearly and explicitly imports a vesting of the life estate in J. B. B., Sr., immediately upon its execution, and excludes the thought of the postponement of such vesting during the life of J. B. B., Sr., and its vesting only at his death, and then only in the event he has up to that time fulfilled all the conditions which the deed imposed. Nor do we find anything in the attendant circumstances which would call for a different construction. The intention for an immediately vested life estate is explicit throughout the deed, and we can find no language therein calling for a contrary construction. The granting clause is to J. B. B., Sr., and his heirs after his death, of the "use, enjoyment, possession, and title in fee in the manner and order and subject to all the conditions, restrictions and limitations as the same are hereinafter specifically stated, and not otherwise." These conditions, etc., are set forth in the habendum clause, copied in full in the note ante. This clause is quite lengthy, but its provisions in this regard are quite plain, and may be fairly summarized as follows: The "use, possession and title in fee" is to J. B. B., Sr., "during his lifetime, and after his death to his children or their descendants, in the order and manner and subject to the conditions, restrictions and limitations," thereinafter set out. J. B. B., Sr., is only to have a life estate, but is to have possession, use, control and enjoyment thereof during his life, and to receive the rents and revenues therefrom; provided, however (during) his lifetime he pay all lawful taxes and personally keep possession, use and enjoyment of same, without the

power of disposition of such possession, use, control and enjoyment further than to rent to tenants for grazing or agricultural purposes, under contracts never to exceed two-year periods. The conveyance was subject to the "additional provision" that during the minority of J. B. B., Sr., the grantors or the survivor should be agents and trustees of J. B. B., Sr., to manage and control the property, collect rents, etc., for J. B. B., Sr's., benefit, use the proceeds for his support and education, and account to him for any balance upon his attaining his majority. Should J. B. B., Sr., die without issue and without default in the deed's conditions, a life estate should vest in the other children of grantors, under the same conditions, with remainder in fee to their children and their descendants. Should J. B. B., Sr., default in any of the conditions his rights therein should cease, and the property should revert to grantors or the survivor of them, both as to the life estate and remainder. Should such default occur after death of both grantors, "then the reversion shall be to his children or their descendants, if any, if not to our other children or their descendants."

Upon the death of J. B. B., Sr., the fee was to pass to his children or their descendants, but without the power of alienation until the youngest child of J. B. B., Sr., should have become of age, pending which time they should have the right of possession, use and enjoyment of the property as cotenants, under the same conditions as those imposed upon J. B. B., Sr., and upon default by any of such cotenants, his interest should vest in the surviving cotenants.

Finally, it was expressly provided that the instrument was "not intended and shall not be considered, interpreted or construed as a will, for it is not a will, but it is intended as a present passing of the interests in this land, to begin and take effect of the date of this deed, and this deed is delivered at its date, and it is to be understood, considered, interpreted and construed as a present conveyance of the land herein and as a present parting on our part with the title and possession and the vesting of same in the vendees herein, * * * it being our purpose as shown in this and in like deeds of this date made to all of our other children, to absolutely part with the title and possession of this land and the land described in all the other deeds, and that * * * fee simple title may now pass to

and be \* \* \* finally owned in fee simple by our said children." We are well aware of the general rule that where under application of the foregoing rules the intention is otherwise apparent, the technical or even ordinary meaning of words employed may be disregarded. As was said in Washburn on Real Property, 5th Ed., p. 26, and quoted with approval in Stevens v. Galveston, H. & S. A. Ry., Tex.Civ.App., 212 S.W. 639, 644: " 'It is apprehended that the mere use of any of these terms, ordinarily expressive of a condition or a limitation, would be an unsafe test of the true nature of the estate. The word "proviso" or "provided," itself, may sometimes be taken as a condition, sometimes as a limitation, and sometimes as a covenant.' "

■ So, also it may be conceded that words ordinarily importing a limitation or condition subsequent may be construed as importing a condition precedent, where it otherwise appears from the instrument (construed as above) that such was the manifest intention of the donor. Such was the holding in Spinks v. First Christian Church, Tex.Com.App., 273 S.W. 815, 816, strongly relied upon by appellees. The deed there involved was one absolute in form of a gift to the elders of the church, but provided that it was agreed by the parties that it was for the use and benefit of the church and that in the event the latter should fail to erect a church building thereon in 24 months, the title should "revert" to the donor, but in event of such erection the title in the church should become absolute. It was held that since the only consideration moving to the donor was the erection of the church within the time specified, such erection constituted a condition precedent to the vesting of any title. We read from the opinion: "He simply provided that, if one thing be done within a given time, the deed should become effective; otherwise it would be 'null and void.' In other words, the deed was lying dormant until it should be vitalized and given life by the performance of this condition precedent. The deed merely gave to this church this right to acquire title to this lot by doing a certain thing beforehand. It required affirmative action to bring the deed into being. It was not a question of defeating a deed already in force, as must be true in a condition subsequent. We have been unable to find a deed just like the one at bar. The intention of the grantor here is made quite clear. He shows beyond a doubt that the deed merely conveys a right to these people to acquire title."

There is no pertinent analogy between the deed there and the one here. There the sole consideration for the deed was the doing of a specific thing, a single act, within a specified time. Here the conveyance was to the son of the grantors for life, with repeated express provisions that the title should at once vest in him, though a minor, and the possession, etc., retained by the donors as agents and trustees of the donee during his minority, the breach of the provisos and conditions (of necessity thereafter) attaching being by express stipulation given the effect of working a forfeiture of the title and a reversion thereof to the donors or the survivor of them. The intention of the donors for an immediate vesting of the title and a reversion in case of breach of the stated conditions seems so plain to us as to render further discussion superfluous. It is not material to our present purposes, whether such reversion upon breach of the conditions was automatic (upon limitation) or required reentry (upon condition subsequent). The deed here invested the life tenant immediately upon its execution with all the incidents of ownership; possession and enjoyment of use, rents and revenues. Forfeiture of conditions of ownership could only occur subsequently to a prior enjoyment of such incidents of title.

■ It seems to be conceded by appellees that if a duty rested upon J. B. B., Sr., to protect the interest of remaindermen from forfeiture, by performing the conditions of the deed (here specifically payment of taxes), then his reacquisition of the property inured to the benefit of the remaindermen. But whether so conceded or not, this principle is well established. It is embodied in § 149 (Vol. 1) of the Restatement, which reads: "Where an estate for life and a future interest exist in the same land, and both interests become subject to sale for the collection of a sum of money, and, as between the owner of the estate for life and the owner of such future interest, this whole sum is payable by the owner of the estate for life, or out of his estate, then the owner of the estate for life, by acquiring the interest so sold, acquires no interest which he can assert in derogation of said future interest."

And, as stated in Comment b (p. 490) thereunder, it makes no difference whether the owner of the life estate buys directly, or through an agent or some one else, "or later buys from a person who acquired on the original sale an ownership which, by him, could have been asserted in derogation of the future interest included in such sale."

The following cases, among others, cited by appellant, support in principle the text: Lowry v. Lyle, 226 Mich. 676, 198 N.W. 245; Thayer v. Shorey, 287 Mass. 76, 191 N.E. 435, 94 A.L.R. 307; Mathews v. O'Donnell, 289 Mo. 235, 233 S.W. 451; McCall v. McCall, 159 Mich. 144, 123 N.W. 550; Crawford v. Meis, 123 Iowa 610, 99 N.W. 186, 66 L.R.A. 154, 101 Am.St.Rep. 337; Federal L. Bank v. Newsom, 175 Miss. 114, 161 So. 864; Peterson v. Larson, 285 Mo. 119, 225 S.W. 704; Keller v. Fenske, 123 Wis. 435, 101 N.W. 378.

The subject is treated at length and in detail in the Restatement, Vol. I, § 135 et seq.

█ In this state, besides being a lien upon the land, taxes are a personal obligation of the owner, and as between the life tenant and the remainderman, are the obligation of the former. And this is true even as to unproductive property where the life tenant elects to take the property with whatever benefits may arise from income or profits. Such election carries with it the corresponding burdens of current expenses, which include taxes. Richardson v. McCloskey, Tex.Com.App., 276 S.W. 680, approving on this point the holding of this court in Tex.Civ.App., 261 S.W. 801.

Appellees' contention that no duty rested upon J. B. B., Sr., to protect the interest of remaindermen is predicated upon the proposition that this being a conventional life estate as distinguished from one created by operation of law, it was governed by the terms of the instrument creating it; and since that instrument did not expressly impose such duty, but merely provided for a forfeiture of the estate as the only consequence of failure to perform the conditions, no such duty toward remaindermen ever arose.

In this connection the brief quotes from Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 742, 69 L.R.A. 986, 8 Ann. Cas. 1117, to the effect that at common law conventional life estates were not impeachable for waste. "The reason assigned for this rule is that it is presumed that, if the grantor intended to limit the enjoyment of the estate, he would have expressed his intention in the deed." The contrary was held in Davis v. Bond, Tex.Civ.App., 141 S.W.2d 979, 982, wherein this statement in the Swayne case was referred to as "dictum and not necessary to the disposition of that cause". In affirming the Davis v. Bond decision, the Supreme Court, speaking through Presiding Judge Smedley (then of the Commission), said: "The old common law rule is correctly stated in the Swayne case, but, as pointed out in the opinion of the Court of Civil Appeals in this case, the rule was changed by statutes enacted several centuries before the common law was adopted as the rule of decision in this state, which statutes made conventional as well as legal life estates impeachable for waste." 138 Tex. 206, 158 S.W.2d 297, 302.

██ Conventional life estates are of course governed by the terms of their creating instruments. We apprehend, however, that except as thereby modified, the ordinary incidents of conventional and legal life estates are the same. One of such incidents, as already seen, is the duty of the life tenant toward remaindermen to protect their interests from forfeiture by reason of any act or omission on his part. The deed in issue imposed that duty upon J. B. B., Sr., unless its language "read as an entirety and in the light of the circumstances of its formulation" impel a contrary intention on the part of the grantors.

█ Other than those recited in the deed, the only circumstances disclosed by the record which might conceivably (but which we do not think do) throw any light upon the intention of the grantors to exempt J. B. B., Sr., from the generally implied duties of life tenants to protect from forfeiture the interests of remaindermen, are: the respective ages of the grantors; their community title to the property conveyed; the number and ages of their children and the fact that some of them had then living children. The recitations of the deed show a general scheme on the part of the grantors to provide for their children and grandchildren, by the execution of "like deeds of this date made to all our other children." The provisions of the deed which have especial bearing upon this subject are: 1) the clause reading: "provided however (in) his said lifetime he

shall pay all lawful tax assessments * *," etc.; and that 2) providing that in the event he should default in any of the conditions, etc., of the deed or "violate any of the terms; conditions and restrictions upon him herein" then the entire title, both life estate and remainder, should revert to the grantors or the survivor of them, if living. If it occurred after the death of the survivor, then the fee should immediately vest in his children or their descendants, otherwise in the grantors' other children (for life) and their descendants. The gist of appellee's argument that no duty was imposed upon J. B. B., Sr., to pay the taxes is 1) that the language of the deed does not import such obligation, and 2) that the only penalty for failure to pay taxes was loss of the entire estate conveyed by the deed. It is urged, in this connection, that the deed shows a clear purpose on the part of the grantors to reserve in themselves or the survivor, the untrammeled right of disposition of the entire property, in case of default in any of the conditions during their lives or that of the survivor. This may be conceded. But it does not follow that no duty was imposed upon J. B. B., Sr., to pay the taxes. It seems clear that the reversion to the grantors was upon breach of a condition subsequent, as distinguished from a limitation; and that therefore the reversion would not be effective upon breach alone, but would require re-entry, actual or constructive. Aside from the above rule of construction favoring the greatest title of which the language is susceptible, the language itself imports a condition subsequent and even provides expressly for the right of re-entry. It is conceivable, however improbable it may seem, that without the knowledge of the grantors or the survivor, J. B. B., Sr., might default in payment of the taxes and the entire title pass through tax foreclosure sale to some third party. Does it seem at all reasonable that J. B. B., Sr., would be permitted to reacquire the property, divested of the reversionary right of the grantors or survivor? The proviso that he pay the taxes extends to his entire life. No distinction is made so far as concerns obligation or forfeiture, whether the breach occur before or after the death of the surviving grantor; except that upon breach after his death the forfeiture would be automatic upon limitation over and not a mere reversion upon breach of condition subsequent. Let us assume another hypothetical case: J. B. B., Sr., having fulfilled all the conditions, etc., of the deed during the lives of the grantors, failed, after the birth of J. B. B., Jr., and when he was only a few years old, to pay the taxes, the property was sold under tax foreclosure judgment rendered in a suit in which J. B. B., Jr., was a party defendant and represented by an attorney ad litem. Should J. B. B., Sr., later purchase from the purchaser at the foreclosure sale, would his title thus acquired be divested of the rights of J. B. B., Jr., under the deed? We think a negative answer to each of these questions is manifestly correct. And this because a duty was imposed upon J. B. B., Sr., to protect the interests of reversioners and remaindermen. The conveyance to him carried the express proviso that during his lifetime "he shall pay all" taxes. There is nothing in this language which in any way intimates that he is relieved from the obligation to pay taxes. On the contrary, being a proviso attaching to his life estate and his continued enjoyment of the possession, use and revenues thereof, the necessary implication arising from his acceptance of the title and possession of the property is that an obligation on his part to pay the taxes thereupon arose. The forfeiture clause became operative "upon *default* in any of the conditions, limitations and restrictions in this deed," or upon his *violation* of "any of the *terms,* conditions and restrictions *upon him* herein." Default means "the nonperformance of a duty." Vol. 1 Bouv. Law Dict., Rawle's Third Rev., p. 814. Violate also is used in the same sense, as the violation of some duty imposed by law or otherwise, the violation of the *obligation* of a contract, etc. The fact that forfeiture of the estate would arise from such "default" or "violation," does not militate in any degree against the necessary implication that a recognized or imposed duty was the subject of such default or violation. The obligation and consequent duty to pay the taxes rests (as we have seen) upon the life tenant accepting the estate, independently and in the absence of any reference thereto in the deed. Certainly the proviso does not relieve from or lessen that duty. Under any reasonable construction it is at least a recognition of that duty. We have no doubt that if the estates in reversion or in remainder were lost by the default in or violation of any of the conditions in the deed a personal action in damages would lie in favor of the owners (present or

prospective) of such estates, just as in the case of commission of waste, a subject fully treated in Chap. 13, Vol. II of the Restatement. Moreover as between the life tenant and the remaindermen the taxes constituted a personal obligation on the part of the former, and upon his death constituted a charge against his estate in favor of the latter.

The deed, as a whole, shows unequivocally a plan and purpose on the part of the grantors at once and for all time to divest themselves of all title or possibility of title save only in the reversionary clause which was limited to two conditions, payment of taxes and continued possession. In these respects alone the life estate conveyed differed from the ordinary, unconditional life estate. The reservation of possession and control during minority and as agent and trustee of the life tenant, in no way affected the title conveyed, it was but a further evidence of intention to part with all title as of the date of the deed. There is nothing in the deed which relieved the life tenant from the obligation to the remaindermen not to commit waste, nor do we think the reversionary clause excepted from the general rule the duty to remaindermen to protect their interests from forfeiture as the result of default in any obligation resting upon him as life tenant. The argument that the grantors reserved in themselves the power to protect the remaindermen in case of default through reversion of the title to them, loses whatever force it might otherwise have in the fact that the conditions imposed on J. B. B., Sr., extended throughout his entire life, and their breach after the death of the grantors was fraught with the same consequences to the children of J. B. B., Sr., as remaindermen, at a time when no one was left to protect their interests, as before the death of the grantors. The requirement of payment of taxes and occupation, etc., of the land as conditions of retention of title, runs throughout the deed, and affected all grantees alike, not alone the immediate life tenant, but his children (if any) as remaindermen in fee until the youngest should be 21 years old, grantors' other children as contingent remaindermen for life, and their children during minority of the youngest. The imposition of the severe penalty of forfeiture of the entire estate for breach of the conditions would appear to have for its purpose the creation of an impending inducement to all possible grantees under the deed, not only to keep the taxes paid, but to retain personal possession of the land, except as stated; rather than the creation of a mere remedy as for breach of contract. A general scheme is evidenced to keep the lands in the personal possession of the various members of the family during the prescribed period (a purpose largely prevalent in tying up estates); and to insure that objective through the imposed conditions. The acceptance of title upon these conditions and with this objective would not only subject the acceptor to the conditions but would make him a voluntary actor in carrying out the objective, carrying with it the incident obligation to do the things required of him to that end. All of those whose rights (contingent or otherwise) were dependent upon performance of the conditions of the deed were beneficiaries of the obligation to perform them.

Passing finally to appellees' contention that the deed violated the rule against perpetuities: "A perpetuity has been defined as a limitation which takes the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being, and 21 years thereafter, plus the ordinary period of gestation." Neely v. Brogden, Tex.Com.App., 239 S.W. 192, 193.

Clearly there was no violation of the rule in the inhibition against alienation by the children or descendants of J. B. B., Sr., until his youngest child should become 21 years old. See McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015; 41 Am.Jur., p. 98, § 54, note 11; 48 C.J., § 52, p. 970, note 69.

Whether the remainder (contingent) for life to the other children of the grantors violated the rule, depends upon whether the expression in the deed, "other children," when properly construed, meant the other children then living, or included any child that might thereafter be born to them. The rule requires that the situation be viewed as of the date the instrument becomes effective and "when so viewed, if by any possible contingency a devise (here grant) violates the rule, it cannot stand, and must be held void." Neely v. Brogden, above. If, therefore, unborn children of the grantors were included in the grant, the rule would apply, since it was in legal con-

templation within the range of possibility that other children would be born to the grantors and that they, or one of them, would live more than 21 years after the death of the last survivor of the children living when the deed was executed.

■ But the rule against perpetuities is a rule of property and not one of construction; and where the instrument is capable of two constructions, "one of which would give effect to the whole * * * and the other result in defeating (it) * *, in whole or in part, preference will be accorded to the construction which will uphold" it. 41 Am.Jur., p. 58, § 12. In Neely v. Brogden this rule is stated thus:

"On the other hand, if the language used is not free from doubt or ambiguity, then canons of construction may be resorted to, and that interpretation should be adopted which will uphold and not destroy the will. For:

" 'If this deed, or its parts, are equally capable of two constructions—one, consistent with his (the testator's) having intended to do that which it was lawful for him to do and one which is consistent with his having intended to do that which it was unlawful for him to do—the former will be adopted.' Hancock v. Butler, 21 Tex. 804, 808."

■ We think it appears from the language of the deed and the attendant circumstances, that the "other children" referred to therein were the then living children of the grantors. At the date of the deed J. H. B. and Ellen had been married 29 years. Ellen was then 45 and the mother of 9 children, the youngest was then about six years old. The deed evidenced a scheme to make provision for all their children in the recitation, "it being our purpose as shown in this deed and in like deeds of this date made to *all of our other children.*" Certainly, in this recital "all of our other children," meant only those then living. There is no reasonable basis for ascribing a different meaning to the same words when used in creating a remainder in their favor. If this construction were at all doubtful, the above rule would resolve the doubt and impel its application.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.