# JUNE 1949

CONNECTICUTT GENERAL LIFE INSURANCE COMPANY
ET AL V. JOHN BRYAN BRYSON, JR.

No. A-1736. Decided January 5, 1949.
Rehearing overruled May 4, 1949.
Second rehearing overruled June 1, 1949.
(219 S. W., 2d Series, 799.)

*Hamilton, Dyer & Shultz,* of Dallas, *Sedberry & Williams,* L. B. Harris, Upton, Upton, Baker & Griffis, all of San Angelo, *DeLange & Hudspeth* and *Barnett B. Skelton,* all of Houston, *H. A. Berry,* of Amarillo, and *Black & Stayton, of Austin,* for petitioners.

The Court of Civil Appeals erred in applying the rule of law that is only applicable where the relationship of life tenant and remainderman exists and the property is sold for taxes, which rule cannot apply when the deed expressly provided what should happen if Bryson, Sr., (father of plaintiff herein) failed to pay taxes and the grantors should repossess the property. In that case the grantors should reown the land both as to possession and title as though the deed had never been executed. By repossession of the land the rights of the remainderman was cut off and the title vested in the original grantor. The Court of Civil Appeals erred in holding that although she could repossess the land she had no right to convey it to her son. Lone Star Gas Co. v. X-Ray Gas Co., 139 Texas 546, 164 S. W. (2d) 504; Hanna v. Ladewig, 73 Texas 37, 11 S. W. 133.

*Holloway, Crowley & Hudson* and *Luther Hudson,* all of Fort Worth, *Scott Snodgrass,* of San Angelo, and *Moody and Robertson,* of Austin, for respondent.

While the life tenant is under the obligation, as expressed in the deed to pay the taxes on the property involved, he is also under the obligation to preserve said property from for-

feiture, etc., and where in attempting to discharge said duty, he buys the same in at a tax foreclosure sale, he has the right to reacquire said land and thereby increase his estate to a fee. Lowry v. Lyle, 226 Mich., 676, 198 N. W. 245.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This suit was filed by John Bryan Bryson, Jr., who will hereinafter be designated either as plaintiff or as Bryson, Jr., seeking a declaratory judgment establishing in him a remainder in fee to 5040 acres of land in Concho County and decreeing that petitioners have only a life estate in the land measured by the life of plaintiff's father, John Bryan Bryson, Sr., who will hereinafter be referred to as Bryson, Sr. The suit turns upon the construction of a deed executed by J. H. Bryson and wife, Ellen Bryson, grandparents of Bryson, Jr., to their son, Bryson, Sr., on May 4, 1910. This deed conveyed to Bryson, Sr., a conditional life estate with remainder to his child or children should any survive him; otherwise to his brothers and sisters.

This is the second appeal of this case. Upon the first trial exceptions were sustained to plaintiff's petition, and upon his declining further to amend, the case was dismissed. Upon appeal the Court of Civil Appeals held that the second count in plaintiff's petition stated a cause of action, and accordingly reversed the judgment of the trial court and remanded the case for trial on its merits. 196 S. W. (2d) 532. The application for writ of error was refused. Thereafter the case was tried on its merits before a jury. All special issues submitted to the jury were answered favorably to the defendants, and judgment was rendered by the trial court that plaintiff had no interest, present or in remainder, in the lands, and that the defendants on their cross-action recover the absolute title to the several tracts claimed by them respectively. That judgment was reversed by the Court of Civil Appeals and judgment was rendered in favor of the plaintiff, Bryson, Jr., 211 S. W. (2d) 304. The author of the opinion in the Court of Civil Appeals wrote a separate concurring opinion in which he stated that the sole reason that he did not dissent from the opinion of the court on the second appeal was the action of this Court in refusing a writ of error on the first appeal. Notwithstanding its former action, this Court granted the application for writ of error on the second appeal and thereby consented to re-examine the entire case. It is now before us for re-examination.

Rarely has this Court ever consented to re-examine, on the

second appeal of a case, its holding on the first appeal of the same case, but its authority to do so and to enter judgment in conformity with its decision upon re-examination, even though such judgment overrules the prior judgment, cannot be questioned. Bomar v. Parker, 68 Texas 435, 4 S. W. 599; Galveston, H. & S. A. Ry. Co. v. Faber, 77 Texas 153, 8 S. W. 64; Kempner v. Huddleston, 90 Texas 182, 37 S. W. 1066; Magnolia Park Co. v. Tinsley, 96 Texas 364, 73 S. W. 5; Green v. Priddy, Texas Com. App., 112 Texas 567, 250 S. W. 656. For reasons which will appear in this opinion we have concluded that this is a proper case for the exercise of that authority. The whole case is before us with no change of parties. It would be unthinkable for this Court, after having granted the writ, reconsidered the case, and arrived at the conclusion that the opinion on the former appeal was clearly erroneous, to hold that it is bound by consideration of consistency to perpetuate that error. Our duty to administer justice under the law, as we conceive it, outweighs our duty to be consistent.

John H. Bryson and his wife, Ellen Bryson, owned in community a vast amout of land in West Texas. They were the parents of nine children, ranging in ages, on May 4, 1910, from 6 to 25 years. On the date named they executed nine deeds with like provisions, one to each of their children, the deed before us for construction being the one executed to their son, Bryson, Sr., who was then under 14 years of age. The pertinent provisions of the deed are copied in a footnote to the opinion of the Court of Civil Appeals on the first appeal, 196 S. W. (2d) 532. It conveyed a life estate to Bryson, Sr., but made it subject to conditions and restrictions that greatly limited its value. It provided that the land should be held in trust by the vendors for their son until he should become 21 years of age, when possession should be delivered to him. The power to dispose of the land further than to lease or rent same to tenants for periods not exceeding two years for grazing and agricultural purposes, was expressly denied Bryson, Sr., and the duty to pay all lawful tax assessments was placed upon him. The deed provided that upon the death of Bryson, Sr., the fee was to pass to his children, if any, or their descendants. It was expressly provided that should Bryson, Sr., violate any of the conditions imposed by the deed, the whole of his life estate should revert to his parents or the one of them that might then be living. Bryson, Sr., took personal possession of the land upon reaching his majority in 1917. He married in 1920 and the only child of the marriage, Bryson, Jr., plaintiff in the trial court and respondent here, was born October 12, 1923.

Within less than four years after Bryson, Sr., attained his majority he became heavily involved in debt. His mother had become liable as indorser on his notes to the amount of $25,000 and he defaulted in the payment of taxes on the land for 1920. Thereafter, on March 14, 1921, J. H. Bryson having died in 1915, Ellen Bryson brought suit in the District Court of Runnels County against Bryson, Sr., and his wife to cancel the deed of May 4, 1910, and recover the land on account of the breach· of the condition relative to the payment of taxes. On the same day Bryson, Sr., and his wife filed a waiver of service and entered their appearance in the case. The next day judgment was rendered canceling the deed and reinvesting title to the land in Ellen Bryson. On May 2, 1921, Ellen Bryson placed a deed of trust lien upon the land in favor of Nelson Loan Company to secure a loan of $30,000. Most of the money was used to pay notes of Bryson, Sr., on which she was liable as indorser. Thereafter, on July 15, 1921, Ellen Bryson conveyed the property in fee by warranty deed to Bryson, Sr., for the stated consideration of $10 and the assumption of the $30,000 outstanding loan. Thereafter Bryson, Sr., began executing warranty deeds to portions of the land to various persons, twenty or more in number, who are petitioners in this case.

In answer to special issues the jury found that Ellen Bryson did not bring the Runnels County suit for the purpose of attempting to enlarge the life estate of Bryson, Sr., into a full title and thereby to cut off the rights of the remaindermen. It further found that following the default of Bryson, Sr., in the payment of taxes for 1920, Ellen Bryson rescinded the deed of May 4, 1910. As to each purchaser of a tract of land from Bryson, Sr., the jury found that he was a good faith purchaser for value; had made valuable improvements thereon in good faith, and had acquired title to his claimed tract by limitation. Our opinion will not be based in any degree upon the findings with respect to good faith purchasers, valuable improvements or limitations, and so those findings will not be discussed.

■ The theory of respondent, which was sustained by the Court of Civil Appeals on the former appeal, 196 S. W. (2d) 532, and reaffirmed by its opinion on the second appeal, 211 S. W. (2d) 304, is clearly stated in the opinion in this language:

"The 1910 deed, its acceptance and possession thereunder by J. B. B., Sr., imposed upon him the legal duty to the remaindermen to pay the taxes and prevent any forfeiture of the remainder. Therefore, even though there was an effective forfeiture and revesting of the fee simple title in Ellen Bryson,

the reconveyance in fee by her to him inured to the benefit of the remaindermen and had the legal effect of vesting in him only a life estate, and 'the remainder estate immediately revested and reattached thereto as fully as though said conveyance had specifically so provided.' " 196 S. W. (2d) 537.

That theory is based upon the rule applicable in ordinary cases of life tenant and remaindermen that the former owes the duty to the latter to pay the taxes and that if he breaches that duty and the property is sold for taxes, and he, at the tax sale or thereafter, acquires title to the property, he holds same for the benefit of the remaindermen. The rule rests upon the equitable principle that no one should profit by his own default. If this case cannot be distinguished from a case of life tenant and remainderman where the deed under which they claim is silent as to the consequences of a default by the life tenant, then the judgment of the Court of Civil Appeals is correct and should be affirmed, but we are well convinced that it can and should be distinguished from a case of that nature.

It seems appropriate here to observe that the opinion of the Court of Civil Appeals on the first appeal (196 S. W. (2d) 532) was well considered and should be appraised in the light of the concession made by appellees in that case, petitioners here. The opinion stated that it seemed to be conceded that if the duty rested upon Bryson, Sr., to protect the interests of remaindermen from forfeiture by performing the payment of taxes, then his reacquisition of the property inured to the benefit of Bryson, Jr. Obviously that concession greatly influenced the court in arriving at its conclusion. As the case is presented to us at this time, no such concession is made. Petitioners do not even question the proposition that the duty rested upon Bryson, Sr., to pay the taxes, but take issue with Bryson, Jr., on the question of what are the consequences of the failure of Bryson, Sr., to do so and of the action of his mother in repossessing the property.

The source of the rights of Bryson, Jr., is the deed executed by his grandparents on May 4, 1910. That deed which created his rights defined and measured them also. Our problem is not solved by focusing attention upon Bryson, Sr., and emphasizing his default; rather it must be solved on the basis of what consequences did the deed of his parents attach thereto. This case must be decided solely upon the construction of the deed of May 4, 1910, and the rights of the parties fixed in accordance with the intention of the vendors as reflected by the deed as a whole.

■ On May 4, 1910, J. H. and Ellen Bryson had nine living children, most of them being minors, and the youngest being but six years of age. They had vast holdings of real estate and undertook to convey it so as to assure a measure of security to their children and grandchildren. Not knowing whether or not their children would make wise use of their property, they so disposed of their lands as to vest practically no discretion in them and to reserve unto themselves the authority to decide how best to protect their grandchildren. Their intention is manifest from the language of the deed as a whole to repossess the land absolutely in the event of a breach by any child of any of the conditions of his deed, and at that time to make such provision, if any, as they or the survivor of them should think best for their grandchildren. They were careful to make provision against the contingency of the sale of the property for taxes. To prevent that occurrence the deed provided for a reverter to the vendors if taxes should become delinquent during the lifetime of either of them, and to other designated persons in the event default was made after the death of the vendors.

Had the deed merely conveyed this land to Bryson, Sr., for life with remainder to his children, then there would have been written into the deed by operation of law the general rule relied upon by Bryson, Jr., but the vendors, as they had the absolute right to do, specifically defined the rights of the life tenant and the remaindermen in the event of default by the former in the payment of taxes and thereby left no room for the operation of the general rule. This is the language of their deed:

"* * * in the event John Bryan Bryson during his lifetime should default in any of the conditions, limitations and restrictions in this deed that are provided for his said life estate, or should he violate any of the terms, conditions, and restrictions upon him herein, then it is especially provided that the whole of said life estate and all the right whatever herein conveyed to the said John Bryan Bryson shall immediately cease, and he shall vacate said lands and the same shall revert to us, or the one of us that may then be living, and we, or said survivor, shall have the right to reenter upon and take possession of said land, and *no interest, claim or title whatever shall pass to the children or descendants of the said John Bryan Bryson* but we, or said survivor shall repossess and re-own said land, both as to possession and title to the fee *as fully as if this instrument had never been executed;* and should said default be made after our death, then the reversion shall be to his children or their descendants, if any, if not to our other children and their descendants." (Emphasis ours.)

It is the contention of Bryson, Jr., that this quoted language does not deal with anything except the title which Ellen Bryson got back. We cannot agree that it should be so narrowly restricted. It does deal with the character of title which she got back. In effect it provides that her title shall be of the same kind as that possessed by her and her husband prior to May 4, 1910, that is, one which she in her discretion could convey in fee simple to anyone, including her son Bryson, Sr. But that language deals with the rights of the remaindermen as well as with the title of Ellen Bryson. The grandparents foresaw in 1910 that the thing which actually happened in 1920 might happen at some time. They further foresaw that, in the event of a forfeiture on the part of Bryson, Sr., it might be to the best interests of the remaindermen that some changed provision be made at that time. They accordingly provided that, if forfeiture occurred before the death of both of them, they or the survivor of them should determine what measures should be taken, if any, in the interest of the remaindermen. In order to bring about a condition that would authorize them, or the survivor, to have complete freedom of action in the premises, they provided by the above language for the complete termination of the rights of remaindermen and the reinvestiture of absolute title in them or the survivor of them. When Ellen Bryson made a re-entry of the land the former status was restored and the rights of the parties were the same as if the deed of May 4, 1910, "had never been executed." Our conclusion is that the deed from Ellen Bryson to Bryson, Sr., dated July 15, 1921, conveyed a fee title, subject to the deed of trust lien above mentioned, and that, consequently, the petitioners who purchased tracts of land from him acquired fee title thereto and not merely estates for life.

The point is presented by Bryson, Jr., that the Runnels County judgment was not binding upon him and did not have the effect of divesting him of his interest. The jury has found that the suit was brought in good faith and not for the purpose of attempting to enlarge the life estate of Bryson, Sr., into full title and thereby cut off the rights of the remaindermen created by the deed. But it is argued that the judgment in that case was not binding upon Bryson, Jr., because neither he nor other contingent remaindermen were made parties thereto. Bryson, Jr., could not have been made a party to the suit at that time because he was not born until two years later. Granting that the judgment might not have operated as res adjudicata against him, since no remainderman was a party thereto, it does not follow that the suit for possession of the property was not equivalent to a re-entry by Ellen Bryson. The suit was

clearly a re-entry as against Bryson, Sr., and nothing further was required to forfeit his interest. He alone was in possession and a re-entry against him was a re-entry against the remainder-men. The bringing of the suit, the execution of the deed of trust upon the land, the subsequent conveyance thereof in fee, and the taking of possession by the vendee and those claiming under him establish a re-entry on the part of Ellen Bryson in accordance with the provisions of the deed.

Having arrived at the conclusions above expressed it becomes our duty to reverse the judgment of the Court of Civil Appeals, even though the effect thereof is to overrule its opinion upon the first appeal of the case, which we approved by refusing the application for writ of error. It is accordingly ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion delivered January 5, 1949.

## ON MOTION FOR REHEARING.

CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In his motion for rehearing respondent complains of our failure to discuss points 16, 17, 18, 19, 29, 30, 31, and 32 in the brief filed by him as appellant in the Court of Civil Appeals. Points 31 and 32 present immaterial questions. The other points relate to procedural matters. These points are without merit and to write on them would serve no purpose. They are all overruled.

We have re-examined our holdings in the original opinion in the light of the arguments advanced in support of the motion for rehearing, and are still of the opinion that the questions therein discussed were correctly decided. The motion for rehearing will, therefore, be overruled.

Opinion delivered May 4, 1949.

Second motion for rehearing overruled June 1, 1949.