**EXXON CORPORATION, Appellant,**

**v.**

**William BUTLER, Appellee.**

No. 16224.

Court of Civil Appeals of Texas,
San Antonio.

July 25, 1979.

Rehearing Denied Aug. 8, 1979.

Frank G. Harmon, Walter B. Morgan, Michael Paul Graham, Baker & Botts, Houston, for appellant.

Eugene B. Labay, Cox, Smith, Smith, Hale & Guenther, San Antonio, for appellee.

## OPINION

MURRAY, Justice.

This suit was brought by William Butler, appellee, and two others as lessors against Exxon Corporation, appellant, to recover alleged deficiencies in gas royalty payments under the terms and provisions of four oil and gas leases covering lands owned by the lessors in the Atkinson gas field located in Karnes and Live Oak Counties, Texas. The case was initially tried before the court without a jury and resulted in a take-nothing judgment, which the lessors appealed. The case was transferred on docket equalization by the Supreme Court from the San Antonio Court of Civil Appeals to the El Paso Court of Civil Appeals. The El Paso Court of Civil Appeals affirmed the judgment of the trial court that the lessors were entitled to no additional royalties on three of the leases, but reversed and remanded the case on one of the leases for further proceedings in the trial court in accordance with the opinion of the court of civil appeals. The Supreme Court of Texas refused applications for writ of error by both the lessors and Exxon with the notation, "no reversible error." The El Paso Court of Civil Appeals opinion is reported at 559 S.W.2d 410.

Following the issuance of the mandate on remand, and without hearing further evidence, the court entered judgment in favor of William Butler in the amount of $2,385.34 for additional royalties on gas production attributable to the lease in question. William Butler was the only plaintiff who owned any royalty interest under the lease in question. Therefore, the judgment denied any recovery to the other lessors. The judgment also denied any claim for prejudgment interest. From this judgment, Exxon has timely perfected this appeal.

When gas from the lease in question was ready for production in September, 1971, Exxon contracted with LoVaca Gathering Company to sell the gas from this lease at a price of twenty cents per mcf. Before entering into the LoVaca contract, Exxon attempted to find other purchasers for the gas. These efforts, however, were unsuccessful. LoVaca was the only purchaser of gas in the field at any material time; thus, it constituted the only market. It is undisputed that when Exxon entered into the gas sales contract with LoVaca, the price paid by LoVaca for the gas was the highest price being paid by LoVaca anywhere in the area, and that the contract terms and conditions were as good as could have been obtained from any other purchaser. In the fall of 1972, Mr. R. E. Haas, the only other producer of gas in the field, completed a new well and contracted to sell the gas from that lease to LoVaca for the record price of thirty-five cents per mcf. Still later, Haas was able to negotiate a higher price with LoVaca for his share of the gas produced from other wells in the field. Exxon continuously attempted to obtain a higher price for the gas produced from the

field including the lease in question, but was unsuccessful. It is undisputed that Exxon has at all times paid royalties to William Butler on the basis of the net proceeds received from the sale of the gas, which was being delivered to the only purchaser in the field at the price fixed under a good faith, binding contract.

The gas royalty provision of the lease in question provides: "In consideration of the premises the said Lessee covenants and agrees . . . to deliver to the credit of the Lessor . . . 1/16th of the market value at the well of all gas produced, and saved from said leased premises."

In its first three points of error, Exxon essentially argues that there is no evidence to support the judgment of $2,385.34 because the market value at the well of gas, which has been sold pursuant to a bona fide contract that was prudently entered into, is the price for which that gas is sold less the ordinary marketing costs. In its fourth point of error, Exxon contends that the trial court erred in entering judgment for additional royalties because the undisputed evidence establishes that the royalty payments made to William Butler were paid in compliance with the provisions of the division order, which was executed and accepted by William Butler as a valid agreement binding on all royalty payments. The evidence is undisputed that Exxon has paid William Butler all royalties due if their interpretation of market value is correct.

Exxon presents a very persuasive argument that the market value at the well of gas, which has been sold pursuant to a bona fide contract that was prudently entered into, is the price at which the gas is sold less the ordinary marketing costs. Nevertheless, the law of this case, as established by the El Paso Court of Civil Appeals, is otherwise.

■ The law of the case doctrine is the rule under which an appellate court on a subsequent appeal is bound by the prior decision on a former appeal in the same case. The phrase, "law of the case," as applied to the effect of a decision of an appellate court in an earlier appeal in the same case, merely expresses, in the absence of a statute, the practice of courts generally to refuse to reopen what has been decided, and is not a limit to their power. The law of the case doctrine applies irrespective of whether the decision of the former appeal is right or wrong. The doctrine applies even in situations in which the court, upon a later appeal, specifically finds or strongly intimates that the decision on the former appeal was erroneous. *Elliott v. Moffett*, 165 S.W.2d 911 (Tex.Civ.App.—Texarkana 1942, writ ref'd w. o. m.); *Trinity & B. V. Railway Co. v. Geary*, 169 S.W. 201 (Tex. Civ.App.—El Paso 1914), *rev'd on other grounds*, 107 Tex. 11, 172 S.W. 545 (1915).

■ An exception to the doctrine of the law of the case exists where the decision on a former appeal was clearly erroneous. *Connecticut General Life Insurance Co. v. Bryson*, 148 Tex. 86, 219 S.W.2d 799 (1949); *Miller v. Winn*, 28 S.W.2d 578 (Tex.Civ.App. —Fort Worth 1930, writ ref'd). In *Connecticut General Life Insurance Co. v. Bryson*, our Supreme Court stated:

Rarely has this Court ever consented to re-examine, on the second appeal of a case, its holding on the first appeal on the same case, but its authority to do so and to enter judgment in conformity with its decision upon re-examination, even though such judgment overrules the prior judgment, cannot be questioned. For reasons which will appear in this opinion we have concluded that this is a proper case for the exercise of that authority. The whole case is before us with no change of parties. It would be unthinkable for this Court, after having granted the writ, reconsidered the case, and arrived at the conclusion that the opinion on the former appeal was clearly erroneous, to hold that it is bound by considerations of consistency to perpetuate that error. Our duty to administer justice under the law, as we conceive it, outweighs our duty to be consistent.

148 Tex. at 88–89, 219 S.W.2d at 800 (citations omitted).

■ The El Paso Court of Civil Appeals' opinion in this case holds that market value means the prevailing market value at the time of the sale, and the sale occurs at the time of delivery to the purchaser. In so holding, the El Paso Court of Civil Appeals followed *Texas Oil & Gas Corp. v. Vela*, 429 S.W.2d 866 (Tex.1968). We interpret the opinion of the El Paso Court of Civil Appeals to hold that the market value of the gas production from this lease must exceed the contract price, and unless this holding is clearly erroneous, it becomes the law of the case. Until *Vela* is determined by our Supreme Court to be incorrect, we cannot hold that the El Paso Court of Civil Appeals' opinion is clearly erroneous. The Supreme Court has granted a writ of error on points that attack the holding in *Vela* in *Exxon Corporation v. Middleton*, 571 S.W.2d 349 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ granted). If the Supreme Court should determine in *Middleton* that the market price of gas is the price fixed under a good faith, binding contract, then the opinion of the El Paso Court of Civil Appeals in this case would be clearly erroneous.

■ By its last point of error, Exxon argues that the trial court erred in entering judgment for additional royalties because the royalty payments made to Butler were paid in compliance with the provisions of the division order, which was a binding contract executed and accepted by Butler. We disagree. What we have said above concerning the law of the case applies equally well to this point. This contention was decided adversely to Exxon by the El Paso Court of Civil Appeals, and we cannot say that it was clearly erroneous.

■ Appellee urges by cross-points that the trial court erred in failing to enter judgment for additional amounts of royalty based upon the opinion testimony of their expert witness, Max Powell. It is undisputed that the amount of additional royalties based on the testimony of Powell would be $3,467.12. Much of Powell's testimony is summarized in the El Paso Court of Civil Appeals' opinion at page 413 and will not be repeated here. We interpret appellee's argument under these points to be that the amount of additional royalties to be paid Butler is established as a matter of law by the testimony of Powell. We disagree.

The holding of the El Paso Court of Civil Appeals concerning Powell's testimony was as follows:

Thus, we believe that the Butlers are entitled to recover from Exxon a gas royalty payment for all gas sold under Lease No. 510266 based on market value at the time of delivery during the period from October 1, 1972, until October 1, 1975. In making such determination, we disapprove of the trial Court's alternative conclusion that market value should be based upon the volume-weighted average of all committed gas delivered in the market area. *While we may not make initial findings for the first time on appeal,* we believe that since Exxon did not offer testimony to refute the conclusions reached by Mr. Powell as to market value, *that the trial court may take those figures of Mr. Powell as to market value each quarter and multiply them by the amount of gas delivered each quarter under Lease No. 510266 and properly arrive at the royalty due, plus such determination as may be made concerning interest for past due sums.*

559 S.W.2d at 417 (emphasis added) (footnote omitted).

It is clear that the El Paso Court of Civil Appeals did not consider that the market value of the gas royalty payments was established as a matter of law by Powell's testimony. If Powell's testimony was conclusive, the El Paso Court of Civil Appeals could have well rendered and not remanded the case to the trial court. The judgment of the trial court was remanded with instructions to make a new determination of "market value" based on the evidence. We believe, however, that the El Paso Court of Civil Appeals was correct in holding that Powell's testimony could be considered. Powell testified that in his opinion there was not an actual market in the Atkinson field, and he gave his opinion of market

price based on comparable sales in the area. He also testified that on arriving at market value he did not consider the gas purchase contract entered into between Exxon and LoVaca.

■ We believe the correct rule is stated in *Texas Oil & Gas Corporation v. Vela*, 405 S.W.2d 68 (Tex.Civ.App.—San Antonio 1966), *rev'd in part, aff'd & reformed in part*, 429 S.W.2d 866 (Tex.1968). In *Vela*, Judge Barrow, writing for the court of civil appeals, stated:

In our opinion the proper rule is that the price paid under a gas purchase contract entered into between lessee and a third party is not necessarily the 'market price' as provided for in the lease. However, this price, together with the circumstances of such contract, should be considered along with evidence of comparable sales to determine the market price.

405 S.W.2d at 74. The court also stated, "All parties agree that comparable sales of gas are those comparable in time, quantity, quality, and availability of marketing outlets." *Id.* These holdings were upheld by the Supreme Court. Accordingly, the trial court in the present case did not err in failing to enter judgment based solely on the testimony of Powell.

Appellee's final cross-point complains of the action of the trial court in failing to award prejudgment interest on the judgment. Appellee's claim of prejudgment interest is based on Article 5069–1.03, which reads as follows:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1971).

■ We agree with appellant that the trial court was correct in denying prejudgment interest under the circumstances in this case. The statute requires that the contract provides the means for ascertaining the sum due and payable. This contract provides that the appellant shall pay the appellee the market value at the well of all gas produced, but does not provide a formula to determine the market value.

In *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978), the contract by its terms provided the means for ascertaining the sum due and payable each month. The payments for gas delivered by Stahl each month were to be based in part on "the weighted average price received" by Phillips from all of its sales of Panhandle field gas to third parties during the preceding month. The Supreme Court held that the means of ascertaining the sum payable was provided in the written contract and allowed prejudgment interest.

In *Exxon Corporation v. Jefferson Land Co., Inc.*, 573 S.W.2d 829 (Tex.Civ.App.—Beaumont 1978, writ filed), the court disallowed prejudgment interest in a case similar to this case. We agree with the Beaumont Court of Civil Appeals when it stated:

Until the question of how to arrive at the market value of natural gas at the well head in an intrastate situation where the producer is selling the gas to some customers under preexisting contracts at less prices than prevail today is finally settled by the courts, we cannot say that the amount of damages sustained by lessors was definitely determinable.

573 S.W.2d at 832.

The judgment of the trial court is affirmed.

KLINGEMAN, J., not participating.